Lewis S. Hewlett, Administrator, with the Will annexed, &c. of Charles Hewlett *v.* Henry Hewlett.

On the 5th of April, 1802, Charles H., executed bonds to Henry and New-berry H., for $375, and $150 payable, on the death of their mother Martha, to them or if either died without issue, to the survivor or his heirs. Charles H. died, and among his papers was found the note of Henry H., for $310, dated 2d October, 1818, and his draft of the same date on Charles H., in favor of Newberry H:, for $200, inclosed in a memorandum written by Charles, dated 3d January, 1829, showing $548 due, " and to be taken, by agreement, from the bonds." Newberry H. died insolvent, indebted to Charles; but, by his death, the bonds became the sole property of Henry H. In 1818 Henry H. left this state for Baltimore, did business and failed there in 1829 ; took the benefit of an insolvent act in the Baltimore County Court; but did not insert these bonds amongst his assets. Martha was not then dead, but died soon afterwards. Shortly after taking the benefit of such act, Henry H. came again to this state, and sued the administrator, with the will annexed, of Charles H., on the bonds, who, believing that Henry H. would plead the statute of limitations to any set-off founded on the note and draft and not knowing that the former had gone into insolvency in Baltimore, allowed judgment to go by default. But having now got knowledge of such insolvency proceedings, he filed a bill to restrain Henry, and to have the judgments satisfied and cancelled. *The court* decreed it to be a fair conclusion that Henry, when he took the benefit of the act, considered the bonds paid and extinguished by his indebt-edness on the note and draft, (which, with interest, amounted to more than the bond ;) that the statute of limitations, owing to his absence, would not have availed him ; that it was equitable to remember how an adminis-trator had to act from the information of others in obtaining facts for de-fence ; and that the complainant, administrator, was within the exception of the statute against relief from judgments. Decree as prayed for, with costs.

It will be presumed that an insolvent exhibits a just account of his debts and credits, and not that he has committed perjury or intended wrong in regard to such account.

---

Feb. 20,
1839.

Debtor and
Creditor.
Statute of
Limita-
tions.
Set-off.
Presump-
tion.
Insolvent.

Bill filed by Lewis S. Hewlett, as administrator, with the will annexed of Charles Hewlett, deceased, to stay proceed-ings in a surrogate's office which were to make him account, and have the real estate of the said Charles sold to satisfy judgments ; and also, to have such judgments satisfied and cancelled.

The bill stated that two suits in debt were brought in Queen's Common Pleas, by the defendant against the com-plainant, as administrator, with the will annexed, of Charles Hewlett, in November term, 1830, on two bonds of Charles

Hewlett to the defendant and one Newberry Hewlett, payable to them or the survivor, on the death of their mother Martha. One of these bonds was dated the fifth of April, 1802; condition, for the payment of $375, payable on Martha's death to them, or, if either died without issue, to the survivor or his heirs; and the second was dated the ninth day of September, 1802; condition, for the payment of $150, payable in like manner as the first; judgments for the penal amounts entered by default, and notice given that executions were about to be issued to charge the complainant personally. That the complainant had sold real estate of Charles Hewlett, in Suffolk County, by order of the surrogate, and applied the proceeds as also those of the personal estate in course of administration to the payment of *bona fide* debts. That there are not assets to pay these judgments, but that there is real estate to make them secure, if they are just and to be paid. That the complainant notified the defendant's attorney that he was preparing papers for an application to chancery in the matter, when the defendant, thereupon, got an order from the surrogate of Suffolk County, calling on the complainant to pay into court the proceeds of the real estate, and to account. That, on taking out letters of administration, he advertised for all claimants on the estate of Charles Hewlett to present their claims. That the defendant did not present any. That the complainant had heard there were obligations in the defendant's favor, but not knowing their nature, he applied to the defendant and requested to see them. That the defendant would not show them, said he did not know he was entitled to them, or to anything upon them, or to that effect. That the defendant afterwards intimated he should expect something on the bonds. That the complainant then told him of his owing the estate on a note and order, which the defendant impliedly admitted, not pretending they had been paid. That the complainant, finding the defendant about to insist on the payment of the bonds, offered to submit the matters to arbitration, which the defendant refused. That the complainant objected to allow the bonds, as a subsisting debt, unless in account stated, in which the debt due to Charles's estate should be brought in, as he con-

sidered them in part, at least, cancelled by counter indebtedness. That, from the papers left by Charles Hewlett, the defendant appeared to be a debtor in a greater amount than the conditions of the two bonds, viz. a promissory note for $310, dated Brooklyn, Oct. 2, 1818; and draft, same date, on Charles Hewlett, for $200, favor of Newberry Hewlett. That there was a statement among Charles's papers, in the defendant's handwriting, headed thus, " *A list of debts due the following persons, viz.*" Setting forth, among others, the said Charles Hewlett and Newberry Hewlett, as his creditors, in the sum of $548, which " list " the complainant charged was furnished by the defendant at or about the date of the note and draft. That the note and draft were inclosed in a memorandum written by Charles shortly before his death and under the solemn prospect of it; which memorandum sets forth $548 due and to be taken, by agreement, from the bonds, (date Jan. 3rd, 1829.) That Charles, within a few days after the above date, died. That he left a wife, executrix of his will, and an only daughter as his heir. The widow renounced, and the complainant became administrator with the will annexed, under letters from the surrogate of Suffolk County. That he supposed, at first, that the defence against suits on the bond would be complete at law; but, understanding that the plaintiff therein would object the statute of limitations to the note, draft, and account so due to Charles's estate, the complainant was advised that a defence would not avail; and, to save expense, therefore he omitted to plead, expecting, however, that the said plaintiff would yield something to the equities of the case, but in which he was disappointed. That Charles and Newberry Hewlett, for years previous to January, 1823, were co-partners under the firm of C. & N. Hewlett. That in said January, 1823, Newberry died, and Charles administered on his estate under letters from the surrogate of Kings' County, dated the eleventh day of January, 1823. That Newberry was indebted to the firm and to Charles individually in a greater amount than his portion of interest in the firm. That Newberry's estate was still indebted to Charles's estate, and was, as the complainant believed, insolvent at the time of his death. That Newberry died

without lawful issue ; and that, thereupon, the right of Henry to the bonds became absolute and exclusive as the survivor. That soon after the date of the before mentioned note and draft or order, defendant went from New York to Baltimore, in Maryland, and was there some years in business as a merchant. And the complainant had heard that he made some arrangement, or got a discharge from his creditors in Baltimore, and was enabled to return to Long Island, where he resided when the above suits were brought. That the complainant knew nothing of the nature of the discharge, or the mode of, or proceedings for obtaining it, when the suits on the bonds were brought, and was entirely ignorant thereof until after the judgments had been obtained. That, among various reports, he heard that the defendant had applied in Baltimore for the benefit of the insolvent law, and been defeated ; but not getting any information from the defendant on the subject, and not knowing but the proceedings there might bear on this case, he caused inquiries to be made in Baltimore, which, after much delay, resulted in establishing the fact that two applications were made by the defendant for the benefit of the Maryland insolvent law ; and that, upon the last, in 1829, he succeeded in obtaining it, as appeared by the record of the proceedings of Baltimore County Court, which showed that the defendant, in February, 1829, petitioned the court for the benefit of the law, setting forth, in a schedule " all his property, real, personal, and mixed, to which he is in any way entitled ;" and making oath, that such " *schedule and list of debts due him contain a true statement of all his property, real, personal and mixed, to which he is in any way entitled,* the necessary wearing apparel of himself and wife excepted." That the order specified his books, papers, accounts, *bonds, notes, and evidences of debt.* And which proceedings further set forth, that the said defendant in the said February, 1829, assigned to or assigned under said law, *not only all the property and estate mentioned in said schedule, but also " all other property and estate, real, personal, and mixed, of what kind nature or quality soever, (excepting the wearing apparel, bed and bedding of the said Henry Hewlett,) which the said Henry Hewlett has or*

*claims any title to or is in any respect entitled to, in pos-*
*session, remainder or reversion;"* and that a discharge
was, thereupon, granted to the defendant by the court, at
its October term, 1829. That Charles Hewlett was no
where mentioned as a debtor in these papers or defendant's
debtor on these bonds or otherwise, and no claim on him
was pretended to be conveyed to the assignee. That the
bonds had been shown to the complainant; that they were
without any assignment or the appearance of any having
ever been made. The bill charged that it was agreed be-
tween the complainant and the defendant, after Newberry's
death and the date of the note and order, that the account
should be off-set against the bonds. That the defendant
so understood it, and that this only can explain his omitting
the bonds in his schedule at Baltimore. That, in suffering
defaults in the suits, he supposed that the account of off-set
would be excluded by the statute. That he did not get a
knowledge of his defence from Baltimore until after the
defaults. That the proceedings at Baltimore are, as he
charged, a good defence. That Henry's proceeding in the
suits against his own knowledge and presuming on the
complainant's ignorance made the judgments fraudulent.
*Prayer:* That the defendant be enjoined from requiring the
complainant to account before the surrogate of Suffolk Coun-
ty; and that the bond be given up and cancelled, and satis-
faction entered of the judgments; that the defendant pay
costs; and for general relief.

The defendant, by his answer, admitted notice of inten-
tion to issue executions; but none issued; admitted sales of
some of Charles's estate, but was ignorant how it was ever
applied by the complainant in payment of debts. Admitted
that some real estate was unsold, but whether sufficient to
ensure payment of judgments, he could not answer. Ad-
mitted obtaining order from the surrogate of Suffolk County.
Believed advertisement by complainant, as administrator,
was published, but never having seen it, did not admit pub-
lication. Heard of it eight or nine months after Charles's
death. Could not say whether before or after advertise-
ment he presented his claim; but before presenting his
claim, he wrote to the complainant respecting the bonds.

Denied any recollection of the complainant's applying to him respecting the bonds, or of his refusing to show them, or of using the words charged; or if so, it was before Martha Hewlett's death, and while the bonds were in the hands of Richard S. Williams. Says that he did exhibit the bonds to the complainant, and claimed the whole amount. Denied that the complainant informed him that he was indebted to Charles Hewlett's estate, or alluded to the note or order. Admitted that an arbitration was offered, and declined, as occasioning delay. That the complainant refused to pay to his attorney, on the ground of set-off. As to the paper showing his indebtedness to Charles's estate, which have come to the complainant's possession, he knew nothing except from the bill. Admitted that in 1818, he owed Newberry $510; that, to satisfy the same, he gave Newberry a note for $300, and a draft on Charles for $210, given at Brooklyn. That Charles, at the time, owed the defendant $330, and agreed to pay the amount of the draft to Newberry. C. & N. then in partnership; alleged that the note should have been given to Newberry alone, but it was done in a hurry. That Newberry receipted for the note and draft, sets forth copy, date 2d Oct., 1818. Admitted the statement of the debts made by him, that it was previous to giving the note, and that he supposed the $510 was due C. & N., for moneys advanced by the firm; but Newberry said, in Charles's presence, and by him assented to, that the money was advanced by Newberry alone. That the $548 in the statement was liquidated at $510. Denied a promise within six years, and claimed the benefit of exception as if pleaded. Knew nothing of the memorandum left by Charles, except from the bill. Admitted Charles's will; renunciation by widow; and administrationship granted to the complainant. Did not know what influenced the complainant not to plead to the suits. Admitted that a compromise was suggested, but that it was rejected, because enough was not offered. Corrects the alleged date of Newberry's death, from 12th Jan. 1823, as stated in bill, to 1821. Did not know that Charles took out letters of administration on Newberry's estate; nor, whether Newberry was indebted to the firm or to Charles. That New-

berry had real estate, and Charles occupied it at Cold Spring, worth $3000 ; enough, he considered, to pay his debts. That Newberry died intestate, and the defendant, as survivor, thereupon became solely entitled to the bonds, under their condition. That in the latter part of 1818, he went to Baltimore ; became embarrassed in business there ; applied twice for a discharge under the insolvent law there ; last time, in 1829 ; in March, 1829, he obtained discharge, and he returned to Long Island. Did not know if the complainant was ignorant of it; never kept it a secret. It was generally known among his friends, and thought the complainant must have known it before the suits were brought. Did not know of the plaintiff's sending to Baltimore, nor the information he got there ; was never defeated in his application there. Admitted his petitioning in Baltimore court, and the proceedings and record as set forth. Admitted that Charles was not named as a debtor ; nor were the bonds included in the assignment or schedule. That Martha Hewlett was not dead, and the bonds were not in his possession at Baltimore, having been left with Newberry, and on his death, they passed into the possession of a Mr. Rhodes, where they remained until his return aforesaid from Baltimore, (March, 1829,) when he placed them (as collateral security,) in the hands of R. S. Williams. That if "bonds" is a word used in the assignment, it is a mistake. No property whatever went to the assignee, except what is mentioned in schedule. Admitted that no indorsement or assignment was ever made of the said bonds, nor is there any appearance, of such. Denied any understanding or agreement with Charles to off-set. Denied that he considered nothing due on the bonds. Denied motives imputed in bill for omitting bonds in schedule. Did not know under what impression the complainant suffered judgments against him on the bonds, but denied his right to bring the defendant into this court, and craved benefit of exception as though he had demurred or pleaded. That he was advised by counsel that the proceedings in Maryland would not have been a defence at law. Denied that he has taken advantage of the complainant's ignorance, or that the judgments were recovered by fraud.

1839.          The case came before the court, on pleadings and proofs;
HEWLETT      but the above abstract of the former, and the reference to
v.           the latter to be found in the opinion of the Vice-Chancellor,
HEWLETT.     will be sufficient to understand the merits.

Mr. *J. M. Ely*, for the complainant.

Mr. *John Greenwood*, for the defendant.

*Oct. 7.*    THE VICE-CHANCELLOR :—The amount of the defend-
ant's indebtedness to C. & N. Hewlett, as evidenced by the
list of his debts in his own handwriting, and by the note
and draft of the twenty-sixth day of October, one thousand
eight hundred and eighteen, which were in the possession
of Charles Hewlett, the intestate, at the time of his death,
are more than sufficient to absorb the whole amount of the
two bonds, payable by Charles Hewlett, at the death of
Martha Hewlett, which took place in the year one thonsand
eight hundred and twenty-nine, there being no interest ac-
cruing on the bonds during her lifetime.  Taking the note
and the draft as the basis of calculation, namely, five hun-
dred and ten dollars, which the defendant admits he owed
to Newberry Hewlett, and which he does not pretend he
has ever paid, and adding interest for ten or eleven years,
they exceed the amount of the bonds.  But the question is,
whether this indebtedness could be permitted to operate or
be available to Charles Hewlett, if he were living, or to the
complainant as his representative by way of set-off or ex-
tinguishment of the bond debts ?  If the indebtedness was
to the partnership or firm of C. & N. Hewlett, then Charles
Hewlett, as surviving partner, could have made a set-off
of the demand against his individual debt on the bonds :
Collyer on Part. 448.  If to Newberry individually, then,
as administrator of Newberry, Charles could not make it a
set-off against his own debt.  The papers would seem to
import on their face, that the indebtedness originally set
down at five hundred and forty-eight dollars, was to the
partnership of C. & N. Hewlett; and that, by the note and
draft, three hundred dollars of it remained so, and two
hundred and ten dollars became due and payable to New-

berry solely. But, however the fact might be and whatever the difficulties in the way of the complainant, if this case stood upon the right of set-off strictly in Charles Hewlett, I think there is but one conclusion to be formed, and that is the most charitable one for the defendant—that, in the year one thousand eight hundred and twenty-nine, when he proceeded to take the benefit of the insolvent act in Maryland, he considered these bond debts paid and extinguished by the money which he had for many years owed to his brothers, Charles and Newberry or one of them and which Charles had had the entire control of since the death ef Newberry, in the year one thousand eight hundred and twenty-three. Charles likewise considered Henry's indebtedness as applicable, by his consent, to the extinguishment of the bonds, as is evident from the memorandum which he left behind him as a testimony of his understanding on the subject, and which he made shortly before and in anticipation of his approaching end. It is proved that Henry had the bonds with him in Baltimore, some short time previously, and he knew that he alone could claim the payment of them, and that if any thing was due upon the bonds, or should become due, that he would be entitled to receive it; and yet, in the statement of his property and effects under oath, he omitted to mention it and virtually declared that no such property belonged to him. He, indeed, goes further, and, in his list of creditors, makes no mention of C. & N. Hewlett or either of them as creditors. This omission can only be accounted for on the ground that he considered their mutual indebtedness cancelled; that he neither owed C. & N. Hewlett upon the note and draft, nor did Charles Hewlett owe him upon the bonds. It is in vain for him to say the bonds were not yet debts, or only choses in action, or not property inasmuch as Martha Hewlett was then living. They were instruments which created a debt *in presenti*, though *solvendum in futuro*, and he had succeeded to them, and they had become his property on the death of his brother Newberry some six years before, and he was bound to include them in his list of credits or inventory of his estate, so that his creditors might have the benefit of them; and he was also bound to repre-

1839.

HEWLETT
*v.*
HEWLETT.

sent C. & N. Hewlett, or one of them among his creditors, unless, indeed, these cross-demands were compensated by each other and discharged. We cannot presume, that, in his insolvent proceedings, he committed perjury or intended wrong. On the contrary, it must be presumed that he exhibited a just and true account of his debts and credits: Gresley's Eq. Ev. 368. His omission to mention the bonds at that time precludes him from setting them up afterwards as subsisting debts. Nor could he be permitted to avail himself of the statute of limitations as a bar to the simple contract debt which he owed to C. & N. Hewlett. He says, in his answer, that immediately after giving the note and draft in October, one thousand eight hundred and eighteen, he removed to Baltimore, where he resided until his discharge, in one thousand eight hundred and twenty-nine, when he returned to this state. During that period of eleven years, our statute did not run against creditors of his residing in this state. After his return, only about two years elapsed when the bill in this cause was filed for relief. Setting up the statute, therefore, in bar and claiming the benefit of it in his answer, can be of no service or protection to him.

But another question is made, whether the complainant is entitled to any relief in this court, after suffering judgment to be taken against him, by default, in the court of law upon the bonds? It must not be forgotten that the complainant is an administrator, acting, not upon his personal knowledge so much as upon the information of others which he might be able to collect, from time to time, in regard to the matters of defence, if any, which he might be able to make at law. He avows his ignorance of the defendant's insolvent papers and proceedings, until it was too late for him to interpose a plea. Besides, if he had undertaken a defence, it is doubtful whether, upon the technical rules of law, he could have made a set-off or insisted on an extinguishment of the bonds. He might, after all, have been obliged to seek equitable relief; and I think the complainant is fairly within the exception of the rule against granting relief after judgment, where the party has omitted to make a defence, as admitted in several of the cases:

*Lansing* v. *Eddy*, 1 J. C. R. 51 ; *Smith* v. *Lowry*, Ib. 323 ; *Barker* v. *Elkins*, Ib. 466.

The complainant is entitled to the decree which his bill prays for, with costs.