## WESTERN LIVE STOCK ET AL. v. BUREAU OF REVENUE ET AL.

No. 322.   Argued January 31, 1938.—Decided February 28, 1938.

*Mr. D. A. Macpherson, Jr.,* with whom *Mr. J. R. Modrall* was on the brief, for appellants.

*Mr. Frank H. Patton,* Attorney General, with whom *Mr. Richard E. Manson,* Assistant Attorney General, of New Mexico, was on the brief, for appellees.

MR. JUSTICE STONE delivered the opinion of the Court.

Section 201, c. 7, of the New Mexico Special Session Laws of 1934, levies a privilege tax upon the gross receipts of those engaged in certain specified businesses.[1]

---

[1] "Sec. 201. There is hereby levied, and shall be collected by the Tax Commission, privilege taxes, measured by the amount or volume of business done, against the persons, on account of their business

Subdivision I imposes a tax of 2% of amounts received from the sale of advertising space by one engaged in the business of publishing newspapers or magazines. The question for decision is whether the tax laid under this statute on appellants, who sell without the state, to advertisers there, space in a journal which they publish in New Mexico and circulate to subscribers within and without the state, imposes an unconstitutional burden on interstate commerce.

Appellants brought the present suit in the state district court to recover the tax, which they had paid under protest, as exacted in violation of the commerce clause of the Federal Constitution. The trial court overruled a demurrer to the complaint and gave judgment for appellants, which the Supreme Court reversed. 41 N. M. 141; 65 P. 2d 863. Appellants refusing to plead further, the district court gave judgment for the appellees, which the Supreme Court affirmed. 41 N. M. 288; 67 P. 2d 505. The case comes here on appeal from the second judgment under § 237 of the Judicial Code.

Appellants publish a monthly livestock trade journal which they wholly prepare, edit, and publish within the state of New Mexico, where their only office and place of business is located. The journal has a circulation in New Mexico and other states, being distributed to paid subscribers through the mails or by other means of transportation. It carries advertisements, some of which are

activities, engaging, or continuing, within the State of New Mexico, in any business as herein defined, and in the amounts determined by the application of rates against gross receipts, as follows:

"I—At an amount equal to two percent of the gross receipts of any person engaging or continuing in any of the following businesses: . . . publication of newspapers and magazines (but the gross receipts of the business of publishing newspapers or magazines shall include only the amounts received for the sale of advertising space) . . ."

obtained from advertisers in other states through appellants' solicitation there. Where such contracts are entered into, payment is made by remittances to appellants sent interstate; and the contracts contemplate and provide for the interstate shipment by the advertisers to appellants of advertising cuts, mats, information and copy. Payment is due after the printing of such advertisements in the journal and its ultimate circulation and distribution, which is alleged to be in New Mexico and other states.

Appellants insist here, as they did in the state courts, that the sums earned under the advertising contracts are immune from the tax because the contracts are entered into by transactions across state lines and result in the like transmission of advertising materials by advertisers to appellants, and also because performance involves the mailing or other distribution of appellants' magazines to points without the state.

That the mere formation of a contract between persons in different states is not within the protection of the commerce clause, at least in the absence of Congressional action, unless the performance is within its protection, is a proposition no longer open to question. *Paul* v. *Virginia*, 8 Wall. 168; *Hooper* v. *California*, 155 U. S. 648; *New York Life Ins. Co.* v. *Deer Lodge County*, 231 U. S. 495; cf. *Ware & Leland* v. *Mobile County*, 209 U. S. 405; *Engel* v. *O'Malley*, 219 U. S. 128. Hence it is unnecessary to consider the impact of the tax upon the advertising contracts except as it affects their performance, presently to be discussed. Nor is taxation of a local business or occupation which is separate and distinct from the transportation and intercourse which is interstate commerce forbidden merely because in the ordinary course such transportation or intercourse is induced or occasioned by the business. *Williams* v. *Fears*, 179 U. S. 270; *Ware & Leland* v. *Mobile County, supra; Browning* v. *Waycross,*

233 U. S. 16; *General Railway Signal Co.* v. *Virginia,* 246 U. S. 500, 510; *Utah Power & Light Co.* v. *Pfost,* 286 U. S. 165. Here the tax which is laid on the compensation received under the contract is not forbidden either because the contract, apart from its performance, is within the protection of the commerce clause, or because as an incident preliminary to printing and publishing the advertisements the advertisers send cuts, copy and the like to appellants.

We turn to the other and more vexed question, whether the tax is invalid because the performance of the contract, for which the compensation is paid, involves to some extent the distribution, interstate, of some copies of the magazine containing the advertisements. We lay to one side the fact that appellants do not allege specifically that the contract stipulates that the advertisements shall be sent to subscribers out of the state, or is so framed that the compensation would not be earned if subscribers outside the state should cancel their subscriptions. We assume the point in appellants' favor and address ourselves to their argument that the present tax infringes the commerce clause because it is measured by gross receipts which are to some extent augmented by appellants' maintenance of an interstate circulation of their magazine.

It was not the purpose of the commerce clause to relieve those engaged in interstate commerce from their just share of state tax burden even though it increases the cost of doing the business. "Even interstate business must pay its way," *Postal Telegraph-Cable Co.* v. *Richmond,* 249 U. S. 252, 259; *Ficklen* v. *Shelby County Taxing Dist.,* 145 U. S. 1, 24; *Postal Telegraph Cable Co.* v. *Adams,* 155 U. S. 688, 696; *Galveston, H. & S. A. Ry. Co.* v. *Texas,* 210 U. S. 217, 225, 227, and the bare fact that one is carrying on interstate commerce does not relieve him from many forms of state taxation which add to the cost of his business. He is subject to a property tax on

the instruments employed in the commerce. *Western Union Teleg. Co.* v. *Attorney General,* 125 U. S. 530; *Cleveland, C., C. & St. L. Ry. Co.* v. *Backus,* 154 U. S. 439; *Adams Express Co.* v. *Ohio State Auditor,* 165 U. S. 194; *Adams Express Co.* v. *Kentucky,* 166 U. S. 171; *Western Union Tel. Co.* v. *Missouri ex rel. Gottlieb,* 190 U. S. 412; *Old Dominion S. S. Co.* v. *Virginia,* 198 U. S. 299, and if the property devoted to interstate transportation is used both within and without the state a tax fairly apportioned to its use within the state will be sustained. *Pullman's Palace Car Co.* v. *Pennsylvania,* 141 U. S. 18; *Cudahy Packing Co.* v. *Minnesota,* 246 U. S. 450. Net earnings from interstate commerce are subject to income tax, *United States Glue Co.* v. *Oak Creek,* 247 U. S. 321, and if the commerce is carried on by a corporation a franchise tax may be imposed, measured by the net income from business done within the state, including such portion of the income derived from interstate commerce as may be justly attributable to business done within the state by a fair method of apportionment. *Underwood Typewriter Co.* v. *Chamberlain,* 254 U. S. 113; cf. *Bass, Ratcliff & Gretton* v. *State Tax Comm'n,* 266 U. S. 271.

All of these taxes in one way or another add to the expense of carrying on interstate commerce, and in that sense burden it; but they are not for that reason prohibited. On the other hand, local taxes, measured by gross receipts from interstate commerce, have often been pronounced unconstitutional. The vice characteristic of those which have been held invalid is that they have placed on the commerce burdens of such a nature as to be capable, in point of substance, of being imposed (*Fargo* v. *Michigan,* 121 U. S. 230; *Philadelphia & Sou. S. S. Co.* v. *Pennsylvania,* 122 U. S. 326; *Galveston, H. & S. A. R. Co.* v. *Texas, supra; Meyer* v. *Wells, Fargo & Co.,* 223 U. S. 298) or added to (*Crew Levick Co.* v. *Pennsylvania,* 245 U. S. 292; *Fisher's Blend Station* v. *State Tax*

*Comm'n,* 297 U. S. 650) with equal right by every state which the commerce touches, merely because interstate commerce is being done, so that without the protection of the commerce clause it would bear cumulative burdens not imposed on local commerce. *See Philadelphia & Sou. S. S. Co.* v. *Pennsylvania, supra,* 346; *Case of State Freight Tax,* 15 Wall. 232, 280; Bradley, J., dissenting in *Maine* v. *Grand Trunk Ry. Co.,* 142 U. S. 217, 235; cf. *Pullman's Palace Car Co.* v. *Pennsylvania, supra,* 26. The multiplication of state taxes measured by the gross receipts from interstate transactions would spell the destruction of interstate commerce and renew the barriers to interstate trade which it was the object of the commerce clause to remove. *Baldwin* v. *G. A. F. Seelig, Inc.,* 294 U. S. 511, 523.

It is for these reasons that a state may not lay a tax measured by the amount of merchandise carried in interstate commerce, *Case of State Freight Tax, supra,* or upon the freight earned by its carriage. *Fargo* v. *Michigan, supra; Philadelphia & Sou. S. S. Co.* v. *Pennsylvania, supra,* restricting the effect of *State Tax on Railway Gross Receipts,* 15 Wall. 284, with which compare Miller, J., dissenting in that case at p. 297. Taxation measured by gross receipts from interstate commerce has been sustained when fairly apportioned to the commerce carried on within the taxing state, *Wisconsin & M. Ry. Co.* v. *Powers,* 191 U. S. 379; *Maine* v. *Grand Trunk Ry. Co., supra; Cudahy Packing Co.* v. *Minnesota, supra; United States Express Co.* v. *Minnesota,* 223 U. S. 335, and in other cases has been rejected only because the apportionment was found to be inadequate or unfair. *Fargo* v. *Michigan, supra; Galveston, H. & S. A. R. Co.* v. *Texas, supra; Meyer* v. *Wells, Fargo & Co., supra,* with which compare *Wisconsin & M. Ry. Co.* v. *Powers, supra.* Whether the tax was sustained as a fair means of measuring a local privilege or franchise, as in *Maine* v. *Grand Trunk Ry. Co., supra; Ficklen* v. *Shelby County Taxing*

*Dist., supra; American Manufacturing Co.* v. *St. Louis,* 250. U. S. 459, or as a method of arriving at the fair measure of a tax substituted for local property taxes, *Cudahy Packing Co.* v. *Minnesota, supra; United States Express Co.* v. *Minnesota, supra;* cf. *Postal Telegraph Cable Co.* v. *Adams, supra;* see *McHenry* v. *Alford,* 168 U. S. 651, 670–671, it is a practical way of laying upon the commerce its share of the local tax burden without subjecting it to multiple taxation not borne by local commerce and to which it would be subject if gross receipts, unapportioned, could be made the measure of a tax laid in every state where the commerce is carried on. A tax on gross receipts from tolls for the use by interstate trains of tracks lying wholly within the taxing state is valid, *New York, L. E. & W. R. Co.* v. *Pennsylvania,* 158 U. S. 431; cf. *Henderson Bridge Co.* v. *Kentucky,* 166 U. S. 150, although a like tax on gross receipts from the rental of railroad cars used in interstate commerce both within and without the taxing state is invalid. *Fargo* v. *Michigan, supra.* In the one case the tax reaches only that part of the commerce carried on within the taxing state; in the other it extends to the commerce carried on without the state boundaries, and, if valid, could be similarly laid in every other state in which the business is conducted.

In the present case the tax is, in form and substance, an excise conditioned on the carrying on of a local business, that of providing and selling advertising space in a published journal, which is sold to and paid for by subscribers, some of whom receive it in interstate commerce. The price at which the advertising is sold is made the measure of the tax. This Court has sustained a similar tax said to be on the privilege of manufacturing, measured by the total gross receipts from sales of the manufactured goods both intrastate and interstate. *American Manufacturing Co.* v. *St. Louis, supra,* 462. The actual sales prices which

measured the tax were taken to be no more than the measure of the value of the goods manufactured, and so an appropriate measure of the value of the privilege, the taxation of which was deferred until the goods were sold. *Ficklen v. Shelby County Taxing Dist., supra,* sustained a license tax measured by a percentage of the gross annual commissions received by brokers engaged in negotiating sales within for sellers without the state.

Viewed only as authority, *American Manufacturing Co. v. St. Louis, supra,* would seem decisive of the present case. But we think the tax assailed here finds support in reason, and in the practical needs of a taxing system which, under constitutional limitations, must accommodate itself to the double demand that interstate business shall pay its way, and that at the same time it shall not be burdened with cumulative exactions which are not similarly laid on local business.

As we have said, the carrying on of a local business may be made the condition of state taxation, if it is distinct from interstate commerce, and the business of preparing, printing and publishing magazine advertising is peculiarly local and distinct from its circulation whether or not that circulation be interstate commerce. Cf. *Puget Sound Stevedoring Co. v. State Tax Comm'n,* 302 U. S. 90, 94. No one would doubt that the tax on the privilege would be valid if it were measured by the amount of advertising space sold. *Utah Power & Light Co. v. Pfost, supra; Federal Compress & W. Co. v. McLean,* 291 U. S. 17, or by its value. *Oliver Iron Mining Co. v. Lord,* 262 U. S. 172; *Hope Natural Gas Co. v. Hall,* 274 U. S. 284. Selling price, taken as a measure of value whose accuracy appellants do not challenge, is for all practical purposes a convenient means of arriving at an equitable measure of the burden which may be imposed on an admittedly taxable subject matter. Unlike the measure of the tax sustained in *American Manufacturing Co. v. St. Louis, supra,* it does not embrace

the purchase price (here the magazine subscription price) of the articles shipped in interstate commerce. So far as the advertising rates reflect a value attributable to the maintenance of a circulation of the magazine interstate, we think the burden on the interstate business is too remote and too attenuated to call for a rigidly logical application of the doctrine that gross receipts from interstate commerce may not be made the measure of a tax. Experience has taught that the opposing demands that the commerce shall bear its share of local taxation, and that it shall not, on the other hand, be subjected to multiple tax burdens merely because it is interstate commerce, are not capable of reconciliation by resort to the syllogism. Practical rather than logical distinctions must be sought. See *Galveston, H. & S. A. R. Co.* v. *Texas, supra,* 227. Recognizing that not every local law that affects commerce is a regulation of it in a constitutional sense, this Court has held that local taxes may be laid on property used in the commerce; that its value for taxation may include the augmentation attributable to the commerce in which it is employed; and, finally, that the equivalent of that value may be computed by a measure related to gross receipts when a tax of the latter is substituted for a tax of the former. See *Galveston, H. & S. A. R. Co.* v. *Texas, supra,* 225.

Here it is perhaps enough that the privilege taxed is of a type which has been regarded as so separate and distinct from interstate transportation as to admit of different treatment for purposes of taxation, *Utah Light & Power Co* v. *Pfost, supra; Federal Compress & W. Co.* v. *McLean, supra; Chassaniol* v. *Greenwood,* 291 U. S. 584, and that the value of the privilege is fairly measured by the receipts. The tax is not invalid because the value is enhanced by appellant's circulation of their journal interstate any more than property taxes on railroads are invalid because property value is increased by the circumstance that the railroads do an interstate business.

260

But there is an added reason why we think the tax is not subject to the objection which has been leveled at taxes laid upon gross receipts derived from interstate communication or transportation of goods. So far as the value contributed to appellants' New Mexico business by circulation of the magazine interstate is taxed, it cannot again be taxed elsewhere any more than the value of railroad property taxed locally. The tax is not one which in form or substance can be repeated by other states in such manner as to lay an added burden on the interstate distribution of the magazine. As already noted, receipts from subscriptions are not included in the measure of the tax. It is not measured by the extent of the circulation of the magazine interstate. All the events upon which the tax is conditioned—the preparation, printing and publication of the advertising matter, and the receipt of the sums paid for it—occur in New Mexico and not elsewhere. All are beyond any control and taxing power which, without the commerce clause, those states could exert through its dominion over the distribution of the magazine or its subscribers. The dangers which may ensue from the imposition of a tax measured by gross receipts derived directly from interstate commerce are absent.

In this and other ways the case differs from *Fisher's Blend Station* v. *State Tax Comm'n, supra,* on which appellants rely. There the exaction was a privilege tax laid upon the occupation of broadcasting, which the Court held was itself interstate communication, comparable to that carried on by the telegraph and the telephone, and was measured by the gross receipts derived from that commerce. If broadcasting could be taxed, so also could reception. *Station WBT, Inc.* v. *Poulnot,* 46 F. (2d) 671.[2]

---

[2] Great Britain levies an annual license tax on radio receiving apparatus. See Wireless Telegraphy Act of 1904, c. 24, 4 Edw. 7, as explained by c. 67, 15 & 16 Geo. 5, and implemented by regulation printed in Great Britain, Post Office Guide, July, 1936.

In that event a cumulative tax burden would be imposed on interstate communication such as might ensue if gross receipts from interstate transportation could be taxed. This was the vice of the tax of a percentage of the gross receipts from goods sold by a wholesaler in interstate commerce, held invalid in *Crew Levick Co.* v. *Pennsylvania, supra.* In form and in substance the tax was thought not to be one for the privilege of doing a local business separable from interstate commerce. Cf. *American Manufacturing Co.* v. *St. Louis, supra.* In none of these respects is the present tax objectionable.

*Affirmed.*

MR. JUSTICE MCREYNOLDS and MR. JUSTICE BUTLER are of opinion that the judgment should be reversed.

MR. JUSTICE CARDOZO took no part in the consideration or decision of this case.