**INGRAM–RICHARDSON MFG. CO. OF INDIANA, Inc., v. DEPARTMENT OF TREASURY OF STATE OF INDIANA et al. (two cases).**

**Nos. 7198, 7199.**

Circuit Court of Appeals, Seventh Circuit.

July 20, 1940.

Rehearing Denied Oct. 6, 1940.

890

E. B. Barnes and C. M. Wells, both of Indianapolis, Ind., for Ingram-Richardson Mfg. Co. of Indiana, Inc.

Omer Stokes Jackson, Atty. Gen., and J. W. Hutchinson and J. P. McNamara, both of Indianapolis, Ind., for Department of Treasury of State of Indiana et al.

Before SPARKS and MAJOR, Circuit Judges, and LINDLEY, District Judge.

MAJOR, Circuit Judge.

This is an action to recover the amount of $7,177.61, taxes collected by the defendants from the plaintiff under the provisions of the Indiana Gross Income Tax Act, Chap. 117 of the Indiana Acts of 1937, pages 604–645. Of the foregoing, the recovery of $5410.20 was sought upon the theory that it represented an assessment of taxes measured by receipts derived from transactions in commerce between Indiana and other states to which plaintiff was entitled to the exemption specified in Section 6(a) of Chapter 117 of the Indiana Acts of 1937 (at page 615). The plaintiff sought the recovery of $1,154.26 of the amount first mentioned above, upon the theory that it represented taxes assessed upon receipts derived from wholesale sales, as that term is defined by Section 3(a) of the Act.

The court below sustained plaintiff's contention as to the sum of $5,410.20 and entered judgment against the defendants. The appeal in No. 7198 is by the defendants from this judgment.

The court below denied plaintiff's contention as to the sum of $1,154.26, and entered judgment against the plaintiff. The appeal in No. 7199 is by the plaintiff from this judgment. Both appeals may be appropriately considered and disposed of in one opinion.

Plaintiff owns and operates an enameling factory at Frankfort, Indiana, in which are installed various machines, ovens and equipment. It is engaged in the manufacture of enamel, a vitreous substance of fluorspar, cobalt oxide, soda ash, etc., both in a granular form known in the industry as frit, and in a hard finished form, fused with metal parts. In the transactions or business from which the gross income was received, and upon which the tax was laid, the enamel was fused with metal parts used in stoves and refrigerators, manufactured by plaintiff's customers located in Indiana and other states. Plaintiff's traveling salesmen originally solicited and negotiated what are referred to as "purchase orders" from such customers. After the acceptance of these orders by the plaintiff, the metal parts to be enameled were transported by plaintiff's trucks from the customer's place of business, both within and without Indiana, to plaintiff's place of business at Frankfort. After the completion of the enameling process, the identical parts were returned to customers, also by plaintiff's trucks. The stove and refrigerator parts

were then incorporated as an integral part into stoves or refrigerators, which were manufactured by plaintiff's customers. Thereafter, plaintiff billed such customers for said enameling, and remittances were made to plaintiff by mail to its Frankfort office.

In Appeal No. 7198, the question involved is whether the transactions of plaintiff were in interstate commerce so as to make the gross income therefrom immune from taxation under Article I, Section 8, of the United States Constitution.

In Appeal No. 7199, the question involved is whether plaintiff's income was from "wholesale sales" as defined by the Act. If so, it was liable only for a tax at the rate of one-fourth of one per cent; otherwise it was liable at the rate of one per cent. It is the difference which plaintiff contends was illegally collected and which it now seeks to recover.

In Appeal No. 7198, it is argued by the plaintiff that (1) its gross income was from the sale of goods in interstate commerce, and that (2) if not the sale of goods, the income was from services rendered in interstate commerce. As to (1), we disagree with plaintiff's contention. This question, however, is determinative of the question raised in Appeal No. 7199, discussed hereinafter.

■ The Act in question imposes a tax upon the receipt of gross income measured by the amount or volume thereof. Defendants concede that the gross income involved was derived from the performance of service, but deny that such service was rendered in interstate commerce. The argument revolves to a considerable extent, around Section 6 of the Act, which provides that there shall be excepted from the gross income, taxable under the Act, that portion of the income derived from business conducted in commerce between the states "but only to the extent to which the State of Indiana is prohibited from taxing such gross income by the Constitution of the United States of America." It is argued that this is an exemption provision in favor of the taxpayer and the burden is upon the taxpayer to bring itself within its terms. It is our view that this is not an exemption provision, but merely a limitation, in conformity with the commerce clause, upon the power of the state to tax. In other words, this provision neither adds to, nor detracts from, the rights of either the taxpayer or the state.

Whether this view be correct or not, however, the question remains as to whether plaintiff's income received from customers in other states was of an interstate character, which made it immune from taxation. Defendants' argument is predicated upon the theory that the income was received solely from the enameling process performed in plaintiff's Indiana factory. There is some support for this basis in the court's finding of facts, but a reading of the entire findings makes it plain, we think, that the income received was for the total service rendered by the plaintiff, which included the enameling process. Other services which entered into the income were the solicitation of orders by plaintiff's agents, and the execution of contracts, both in other states. Also included in the service was the transportation by plaintiff of the stove and refrigerator parts from points in other states, and the return transportation of such parts by plaintiff after the completion of the enameling process. There was also included, communications by mail, telephone and telegraph between plaintiff and customers located in other states.

As bearing upon the precise question involved, each side cites one case only. Plaintiff relies upon Gwin, White & Prince, Inc. v. Henneford et al., 305 U.S. 434, 59 S.Ct. 325, 83 L.Ed. 272, and defendants rely upon Western Live Stock et al. v. Bureau of Revenue et al., 303 U.S. 250, 58 S.Ct. 546, 82 L.Ed. 823, 115 A.L.R. 944. In the former case the State of Washington sought to collect a gross receipts tax upon gross revenue from services derived by a corporation as marketing agent for growers of fruit. Representatives of the corporation, at various points outside the state, negotiated sales of the fruit on behalf of the corporation, executed contracts of sale, effected delivery of the shipments to the purchasers, and collected and remitted the purchase price. The corporation income consisted of the compensation for the entire service, which was at a stipulated rate per box of fruit sold. The court held such services to be within the protection of the commerce clause of the Federal Constitution, and in doing so, on page 438 of 305 U.S., on page 327 of 59 S.Ct., 83 L.Ed. 272, said: " * * * A substantial part of it is outside the state where sales are negotiated and written contracts of sale are executed, and where deliveries and collections are made. * * *"

In the Western Live Stock case, the court held, page 253 of 303 U.S., page 547 of 58 S.Ct., 82 L.Ed. 823, 115 A.L.R. 944: "That the mere formation of a contract between persons in different states is not within the protection of the commerce clause. * * * Nor is taxation of a local business or occupation which is separate and distinct from the transportation and intercourse which is interstate commerce forbidden merely because in the ordinary course such transportation or intercourse is induced or occasioned by the business. * * *"

In that case the court distinguished between income received from a contract entered into in another state and income from its performance. That is the distinction which defendants seek here to make. In other words, its position, if sustained, must be upon the premise that the income was received solely from the services rendered at Frankfort, Indiana. As stated, we do not believe this premise is sound and it follows that the argument based thereon must fail.

While the question is not free from doubt, we are of the opinion that the reasoning employed in the case of Gwin, White & Prince, Inc., is applicable. We therefore conclude that the state was without authority to assess and collect the tax involved, and the judgment of the District Court in this respect is affirmed.

In Appeal No. 7199, plaintiff contends that its gross income was from receipts from "wholesale sales" as defined in Section 3(a) 3. The material language of such section is: " * * * The term 'wholesale sales' means and includes only the following: * * * (3) Sales of any tangible personal property which is to be incorporated by the purchaser as a material or an integral part into tangible property produced by such purchaser in the business of manufacturing, assembling, constructing, refining, or processing; * * *."

Defendants contend that plaintiff's income was taxable under Section 3(f) of the Act, which imposes the tax upon "gross income from professional services, personal services, or services of any character whatsoever, * * *."

Plaintiff's contention, if sustained, must be upon the basis that it was engaged in the sale of tangible personal property rather than in the sale of a service. It argues that its business consists of the sale of the material which was used in connection with the enameling process, that title to the stove and refrigerator parts, received from its customers, passed to it, and that when the finished product was returned to the customer, a sale was effected and the title reconveyed to the customer. Stress is placed upon the finding that after the enameling process had been completed, the value of the finished product was two or three times greater than it was before. We are of the view that plaintiff's contention cannot be sustained. Clearly, we think its income was derived from the rendition of service, which included numerous elements such as labor, transportation and equipment expense. True, there was included the value of the material. Just what part of the total income this represented, the record does not disclose, but even if it did, it would not, in our opinion, constitute a sale within the meaning of the Act. The acts of the parties themselves indicate that they did not regard the transaction as a sale or as passing title. When the stove or refrigerator parts were received by the plaintiff, no payment was made or credit extended to the customer, and no charge made against the plaintiff, and when returned, no charge was made against the customer for the original part. The identity of the original part was not destroyed by the enameling process and the part returned to the customer was the identical part received from the customer.

We agree with the defendants that the relation between plaintiff and its customers was nothing more than that of bailor and bailee. The distinction between a sale and bailment, as made by the court in Sturm v. Boker, 150 U.S. 312, 14 S.Ct. 99, 37 L. Ed. 1093, is pertinent. On page 329 of 150 U.S., on page 104 of 14 S.Ct., 37 L.Ed. 1093, the court said: " * * * The recognized distinction between bailment and sale is that, when the identical article is to be returned in the same or in some altered form, the contract is one of bailment, and the title to the property is not changed. * * *"

We therefore conclude that plaintiff's income was not from sales of property, but from service. The judgment in favor of the defendants is affirmed.