In the Matter of UNITED AIR LINES, INC., Petitioner, against LAZARUS JOSEPH, as Comptroller of the City of New York, Respondent.

First Department, May 12, 1953.

*Monroe Collenburg* of counsel (*Hardin, Hess & Eder,* attorneys), for petitioner.

*Bernard H. Sherris* of counsel (*Stanley Buchsbaum* with him on the brief; *Denis M. Hurley, Corporation Counsel,* attorney), for respondent.

BREITEL, J. The City of New York imposes a gross receipts tax (Administrative Code of City of New York, ch. 41, tit. RR) for the privilege of doing business within the city. The tax is authorized by State enabling act. It has applied the tax to an allocated portion of the revenues of United Air Lines, Inc. The city claims that this air line corporation has subjected its revenues from transportation of passengers, mail and traffic to such taxation by the extent to which it has engaged in intracity and intrastate activity. United Air, a Delaware corporation, with its principal offices in Illinois, carrying no traffic between points within the city or State of New York, resists the tax, claiming that its activities are exclusively interstate, and that no part of them is separable and distinct from its interstate transportation. (See *Matter of United Piece Dye Works* v. *Joseph*, 282 App. Div. 60.)

United Air operates in many States, from coast to coast, and even beyond the continental borders of the United States. In addition to its main and financial office in Illinois, it has a chief maintenance base in Wyoming. It carries air mail, passengers and freight by aircraft in interstate and foreign transportation. It carries no intrastate traffic in this State. In this proceeding only the years 1943, 1944 and 1945 are involved. For those years its authorized route mileage was just under 3,000 miles. Of that, its route miles in New York City in none of the years were over 19.19 miles. Nevertheless, New York City is one of its four or five chief terminals. Its sale of passenger tickets in New York City, after refunds of about $500,000, averaged over $2,000,000 in each year. It is estimated that an equal amount is sold outside the city for transportation into the city. Because United Air has one of its important terminals here, it operates in New York City the usual facilities, including three traffic offices, a hangar, a stock room of parts and supplies, and a repair and maintenance shop. It employs about 300 persons in the city, including a district traffic manager.

In addition to what has been described, United Air also, as an accommodation or by-product of its operations, sells some parts of airplanes and provides some maintenance for other air lines. These sales average about $12,000 in annual revenue to United Air. United Air is also a member of Airlines Clearing House. This is an organization by which any member air line may sell passage on the lines and routes of any of the other members. Consequently, United Air has occasion to sell tickets for other air lines for passage between intrastate points in New York State.

United Air is one of the principal American air lines. Its gross passenger revenues in each of the years in question range between eighteen and twenty-seven millions of dollars. Under the formula for apportionment of its gross receipts tax, the city sought to apply the tax to one eighth of the allocable receipts of United Air. As will be noted later, involved in this appeal is the allocation of revenues from transportation, not the incidental revenues from services rendered to other air lines, and the sale of parts on which United pays a local tax. The allocable receipts are those derived from carriage, including passenger, mail and freight, to or from New York City from or to out-of-State points and irrespective of where the carriage was contracted. Thus determined the allocable receipts aggregated between almost five and six millions of dollars. Under the apportionment formula used by the city, applicable to the circumstances here, a minimum of one eighth of these allocable receipts was subject to the city's tax.

The city contends that United Air's '' vast business establishment '' within the city as described earlier, the depositing and checking out of moneys in local banks, the handling of baggage and the conveniences of passengers at the terminal, the participation in the exchange and sale operations through Airlines Clearing House, as well as the $12,000 service and sales to other air lines, constitute such a separation, distinction and localizing of its generally interstate operations as to subject its gross receipts to city taxation thereon, on a reasonable apportionment basis.

We do not think so. We think the activities of United Air in New York City are simply a continuous, logical and necessary extension of its interstate air transportation, and that, therefore, the tax imposed here is a local tax on interstate commerce, forbidden by the Federal Constitution. The size of its activities in New York City is but a reflection of the size of United Air's interstate operations and the importance of New York City as a land, sea and air center of transportation. In any event, mere size of operations is immaterial if, in fact, the operations are solely in interstate or foreign commerce. Also, it has never been held that merely because an interstate transaction stops or starts in a State, that the stop or start is localized or intrastate; nor does the city claim that.

The city's gross receipts tax is a tax for the privilege of doing business within the city of New York. It is not an income tax, an ad valorem property tax, nor is it a tax in lieu of other taxes

for the use of facilities within the city. The relevant local law reads: " § RR 41–2.0 Imposition of tax.—a. For the privilege of carrying on or exercising for gain or profit within the city any trade, business, profession, vocation or commercial activity other than a financial business, or of making sales to persons within such city, * * * every person shall pay an excise tax which shall be equal to one-twentieth of one per centum upon all receipts received in and/or allocable to the city from such profession, vocation, trade, business or commercial activity exercised or carried on by him * * *." (Administrative Code, ch. 41.)

It is now quite clear that a tax imposed for the privilege of doing business may not be applied by a State, or locality within a State, to an enterprise that is exclusively engaged in interstate commerce (*Spector Motor Service* v. *O'Connor,* 340 U. S. 602; *Joseph* v. *Carter & Weekes Co.,* 330 U. S. 422; *Puget Sound Co.* v. *Tax Commission,* 302 U. S. 90; *Matter of Seeth* v. *Joseph,* 276 App. Div. 188). By analogous reasoning local taxes on interstate sales or solicitation, where the activity is exclusively interstate, are illegal (*McLeod* v. *Dilworth Co.,* 322 U. S. 327; *Memphis Steam Laundry* v. *Stone,* 342 U. S. 389).

The *Spector* case is quite analogous on its general facts. (The Supreme Court in the *Spector* case emphasized and grounded its decision on the circumstance that the Connecticut court had found that the tax in question was solely on interstate commerce. But for that, it might have been sufficient merely to rely on the holding in the *Spector* case to invalidate the tax in the instant case. Consequently, it is not sufficient merely to analogize the *Spector* case but to make a close analysis of the activities of United Air in this case and cast them in perspective against the recent rulings of the Supreme Court.)

The Spector Company was engaged in interstate trucking. In Connecticut it maintained terminals, twenty-seven full-time workers, and used pick-up trucks to feed its interstate trucks. A gross receipts tax for the privilege of doing business in Connecticut was struck down on the ground the State was without power to impose a privilege tax on an activity exclusively interstate. The *Joseph* and *Puget Sound Co.* cases involved independent stevedoring companies, operating within local areas, but loading and discharging vessels in interstate and foreign commerce. Gross receipts taxes for the privilege of doing business were struck down as invalid impositions on interstate and foreign commerce. These two cases have an added

value. They emphasize that the occurrence of an activity solely inside the geographical limits of a locality does not necessarily render the activity local for purposes of the commerce clause in the Federal Constitution.

On the other hand, an enterprise exclusively interstate in character may be required " to pay its way " and contribute to the support of local government, provided the tax in form and in substance is not a privilege tax, but is one based on property, or is in lieu of property tax, or is for the use of facilities within the State or the taxing locality (*Illinois Cent. R. Co.* v. *Minnesota,* 309 U. S. 157; *Cudahy Packing Co.* v. *Minnesota,* 246 U. S. 450; *Maine* v. *Grand Trunk Ry. Co.,* 142 U. S. 217. See, also, *Ott* v. *Mississippi Barge Line,* 336 U. S. 169, and *McGoldrick* v. *Berwind-White Co.,* 309 U. S. 33, 46 *et seq.*).

In the *Spector* case (340 U. S. 602, *supra*) the question was specifically raised whether a tax which was a privilege tax in form might not be sustained, the burden not being an unreasonable one, as a tax in lieu of property taxes, or as a tax for the use of highways. The suggestion was rejected by the majority of the court. The gross receipts tax was struck down as invalid because it was imposed with respect to exclusively interstate commerce. It was therefore a tax for the privilege of engaging in such interstate commerce.

When the activity of the taxpayer involves a combination (or a mingling) of intrastate and interstate commerce, a gross receipts tax will be held valid if the burden of the tax is reasonably and approximately allocated to that portion of the activities which are severable as intrastate (*Norton Co.* v. *Dept. of Revenue,* 340 U. S. 534; *Greyhound Lines* v. *Mealey,* 334 U. S. 653. See, also, *Cheney Brothers Co.* v. *Massachusetts,* 246 U. S. 147).

A more difficult application of the principle last mentioned occurs where the taxpayer is engaged in interstate commerce, but incident thereto some of its activities become localized and separable from its interstate commerce. In such circumstances, if the tests are met, the taxpayer has subjected itself to the tax jurisdiction of the State or locality and may be required to pay a gross receipts tax for the privilege of doing such intrastate or local business.

Such a tax must be reasonably and at least approximately apportioned in relation to the local incidents which have resulted in the taxpayer being subject to the tax (*Western Live Stock* v. *Bureau,* 303 U. S. 250; *Hans Rees' Sons* v. *No. Carolina,* 283

U. S. 123. See, also, *Spector Motor Service* v. *O'Connor,* 340 U. S. 602, *supra,* and *Dept. of Treasury* v. *Mfg. Co.,* 313 U. S. 252).

Mr. Justice Stone for the Supreme Court summarized the foregoing principles and the reasons for their existence very aptly in the *Western Live Stock* case (303 U. S. 250, 255, *et seq., supra*):

"All of these taxes in one way or another add to the expense of carrying on interstate commerce, and in that sense burden it; but they are not for that reason prohibited. On the other hand, local taxes, measured by gross receipts from interstate commerce, have often been pronounced unconstitutional. The vice characteristic of those which have been held invalid is that they have placed on the commerce burdens of such a nature as to be capable, in point of substance, of being imposed  *  *  *  or added to  *  *  *  with equal right by every state which the commerce touches, merely because interstate commerce is being done, so that without the protection of the commerce clause it would bear cumulative burdens not imposed on local commerce.  *  *  *  The multiplication of state taxes measured by gross receipts from interstate transactions would spell the destruction of interstate commerce and renew the barriers to interstate trade which it was the object of the commerce clause to remove.  *  *  *

" It is for these reasons that a state may not lay a tax measured by the amount of merchandise carried in interstate commerce,  *  *  *  or upon the freight earned by its carriage.  *  *  *  Taxation measured by gross receipts from interstate commerce has been sustained when fairly apportioned to the commerce carried on within the taxing state  *  *  *  and in other cases has been rejected only because the apportionment was found to be inadequate or unfair.  *  *  *  Whether the tax was sustained as a fair means of measuring a local privilege or franchise,  *  *  *  or as a method of arriving at the fair measure of a tax substituted for local property taxes  *  *  *  it is a practical way of laying upon the commerce its share of the local tax burden without subjecting it to multiple taxation not borne by local commerce and to which it would be subject if gross receipts, unapportioned, could be made the measure of a tax laid in every state where the commerce is carried on."

The *Western Live Stock* case is misunderstood if one fails to note in reading the last two paragraphs quoted that in order to apportion a privilege tax on interstate commerce, there must

first be some local or intrastate commerce. Mr. Justice STONE so states, the authorities cited by him and omitted from the quotation, so held expressly, or involved such factual support for their holding. In the *Western Live Stock* case itself, the court sustained the tax because it found that in '' form and substance '' it was '' an excise conditioned on the carrying on of a local business, that of providing and selling advertising space in a published journal, which is sold to and paid for by subscribers, some of whom receive it in interstate commerce '' (p. 257).

Mr. Justice STONE went on to say, at page 258 of his opinion: '' As we have said, the carrying on of a local business may be made the condition of state taxation, if it is distinct from interstate commerce, and the business of preparing, printing and publishing magazine advertising is peculiarly local and distinct from its circulation whether or not that circulation be interstate commerce. Cf. *Puget Sound Stevedoring Co.* v. *State Tax Comm'n*, 302 U. S. 90, 94.''

The reference to the *Puget Sound Co.* case in connection with that statement is significant, as we shall see in later discussing the *Puget Sound Co.* case.

It is significant too that the *Western Live Stock* case was a markedly liberal extension by the Supreme Court of its interpretation of the power of the States to apply local taxation to enterprises involved in interstate commerce, so long as there was no threat of a multiple tax burden. (See Lockhart, Gross Receipts Taxes on Interstate Transportation and Communication, 57 Harv. L. Rev. 40 *et seq.*, [1943].)

It appears that the city's claim must turn on the principles last discussed. Certainly this is not a case of mingled intrastate and interstate commerce. That would be the case if the taxpayer carried traffic both between points in the State and between interstate points. Here all the traffic is interstate. Also, in form and in substance the tax is a privilege tax. That is what the law says it is, and there is no suggestion that the tax is imposed in lieu of any other property taxes to which United Air may be subject, or that it is for the use of any facilities.

Putting aside for the moment the matter of the Airlines Clearing House and the $12,000 service rendered to other air lines, all the matters that the city contends localize United Air's activities are nothing more than the necessary incidents to operating a terminal point for its interstate transportation to and from New York City. The presence of offices, hangar,

repair shops, employees, and the handling of moneys locally are all a direct part of the interstate operation. The sale of tickets for interstate trips is obviously a necessary incident. Indeed, but for these incidents there could be no interstate transportation by United Air. One transports for hire, therefore one is paid. The passenger must get a ticket or other evidence of paid passage. The aircraft must be loaded. It must be discharged. These acts must take place somewhere. These are as essential to commercial air transport as the aircraft itself, or the route to be traversed. As Mr. Justice Cardozo said on behalf of the Supreme Court in the *Puget Sound Co.* case (302 U. S. 90, 92, *supra*) speaking of independent stevedore activities done entirely within the State of Washington, but holding them to be interstate in character:

" Transportation of a cargo by water is impossible or futile unless the thing to be transported is put aboard the ship and taken off at destination. A stevedore who in person or by servants does work so indispensable is as much an agency of commerce as shipowner or master. * * * No one would deny that the crew would be engaged in interstate or foreign commerce if busied in loading or unloading an interstate or foreign vessel. * * *

" What was done by this appellant in the business of loading and unloading was not prolonged beyond the stage of transportation and its reasonable incidents."

The holding and the reasoning in the *Puget Sound Co.* case was later reaffirmed in *Joseph* v. *Carter & Weekes Co.* (330 U. S. 422, *supra*). Since it involved stevedore operations by an independent contractor, its holding and reasoning go well beyond the necessities of this case.

The *Spector* case, mentioned earlier several times, is of course even more applicable to the problem here. There the taxpayer maintained offices, employees and pick-up trucks in the taxing State. Nevertheless, it was held that the State could not tax the gross receipts because they were derived from interstate truck transportation.

The *Puget Sound Co.* case and the *Joseph* case are significant for another reason, worthwhile to note at this time. The local gross receipts taxes were struck down in each case merely because they were privilege taxes on interstate or foreign commerce. There was no claim of unfair burden or of discrimination, actual or potential. The holdings turned simply on the lack of power to tax locally interstate or foreign com-

merce. Nor did these cases turn on the threat of multiple tax burden, as that test had been developed finally in the *Western Live Stock* case, and the later case of the two was decided after the *Western Live Stock* case. So, in the later, the *Joseph* case, it was noted specifically that the constitutional immunity from taxation could not be impaired although there was no danger of multiple taxation by different States because the stevedore activities occurred exclusively within the borders of one State. Nor was there any suggestion that the quantum of the burden made the tax invalid, because concededly the State or the locality could impose a property tax, or a tax in lieu of property taxes, or a tax for the use of facilities, any of which might be equally burdensome. (See Gross Receipts Taxes: A Change in Doctrine, 56 Yale L. J. 898 *et seq.* [1947].)

The activities relied on by the city to justify its tax are in nowise like the activities heretofore held sufficient to subject a taxpayer to the local tax. In *Western Live Stock* v. *Bureau* (303 U. S. 250, *supra*) as we have seen, it was held that the preparation, printing and publishing of a magazine within a State subjected the receipts from sales of advertising to tax, although the advertisements were sold outside as well as within the State, and the magazine was circulated outside as well as within the State. Said the court: " Nor is taxation of a local business or occupation which is separate and distinct from the transportation and intercourse which is interstate commerce forbidden merely because in the ordinary course such transportation or intercourse is induced or occasioned by the business ". (P. 253.) In *Hans Rees' Sons* v. *No. Carolina* (283 U. S. 123, *supra*) it was assumed, of course, that North Carolina could tax receipts allocable to the manufacturing plant located within its borders. The only question was whether the apportionment was fair and reasonable. It should be noted that these cases involved substantial factors in what has been described as unitary operations, in horizontally organized enterprises. A mere statement of the facts in these situations suggests that these substantial and traditionally localized operations should not be free from local taxation, just because at the periphery of the operations the activity was interstate. On the other hand, in this case, the end activities are what we have always associated as necessary and integral terminal activities in interstate transportation, heretofore by land and by sea, and now by air.

No case has been brought to our attention nor have we found anywhere so heavy a weight of interstate commerce was to be raised by so slender a thread of alleged local activity, in order to subject gross revenues to a privilege tax, albeit apportioned.

With regard to Airlines Clearing House and the $12,000 service for other air lines, we have activities that are perhaps intrastate in form and are therefore, arguably, separable and distinct from the large and principal interstate operations carried on by United Air. We hold these matters *de minimis,* however, and not a sufficient justification to subject millions of dollars of interstate receipts to taxation and apportionment by the City of New York. The *de minimis* principle has been applied by the Supreme Court in this very context (*Lehigh Valley Railroad* v. *Pennsylvania,* 145 U. S. 192, 201, disregarding short deflection over State line and holding entire route intrastate; *Greyhound Lines* v. *Mealey,* 334 U. S. 653, 659, *supra,* in which the *Lehigh Valley* case is analyzed and justified as an application of the *de minimis* principle, and in which the court emphasizes that the regulation of commerce is one that calls for practical rather than technical conceptions and limits).

It is significant that there are no appropriate analogies among the cases involving privilege taxes and affecting railroad or steamship terminal facilities to support the city's position. The railroads have not escaped taxation within the States in which they operate, as we have seen from the discussion earlier and the authorities cited. But they have been taxed on their property within the State, on the use of facilities, or on a gross receipts tax in lieu of these other taxes. Interstate air lines may not escape all intrastate taxation. Indeed, they do not. (See *Matter of United Air Lines, Inc.,* v. *Joseph,* 281 App. Div. 876.) The question, and that is all we decide, is whether an interstate air line may be taxed by the city for the privilege of doing business in New York City, without a showing that more than a trivial incident of its activities is intrastate and intracity.

There is another aspect to the problem. We find that United Air does not engage in intrastate and intracity commerce or activity insofar as air transportation is concerned. Accordingly no apportionment of traffic revenues (all that is involved in this case) can be fair because there is no ratio between intracity receipts from transportation and interstate receipts. There is no ratio because one of the factors must be zero. Hence, no

formula with a minimum, such as the 12½% of allocable receipts, applicable to revenues from transportation and defined to include what we hold to be interstate commerce, can be fair.

It is noteworthy that United Air pays a city gross receipts tax on the average income of $12,000 it receives from other air lines for service and parts.

Accordingly, the determination of the city comptroller assessing the apportioned tax on receipts from air transportation should be annulled and a refund directed of the taxes paid for the years 1943, 1944 and 1945.

CALLAHAN, J. (dissenting). I disagree with the majority's application of the *de minimis* rule in determining whether a privilege tax imposed by a locality unduly burdens interstate commerce. The cases applying or discussing this principle involved situations where a carrier in the course of a single trip between termini within a State departed briefly from the State and returned, and the question was considered as to whether such departure transformed an otherwise intrastate activity into an interstate transportation or commerce. (See *Greyhound Lines* v. *Mealey,* 334 U. S. 653, and *Lehigh Valley Railroad* v. *Pennsylvania,* 145 U. S. 192.) In the *Greyhound* case the court noted that legal fictions are hazardous especially in the disposition of constitutional issues.

The tax statute in this case provides for imposition of the tax only upon " receipts received in and/or allocable to the city " from the business activity carried on by the taxpayer. Its imposition is not unconstitutional simply because the taxpayer is engaged in both interstate and intrastate activities.

Assuming that the concededly intrastate activity of the taxpayer represented only a small percentage of its total business and that the balance was interstate, it seems to me that in such case there would be sufficient local activity to subject the taxpayer to a local privilege tax based on its gross receipts, including its receipts from interstate commerce, provided the tax was properly apportioned. Here we have entirely separable and distinct transactions wholly consummated within the State. We may not say that these activities afford no constitutional basis for a privilege tax nondiscriminatory and properly apportioned on the theory that the *de minimis* rule entitles us to disregard the local transactions as comparatively unimportant.

While the factors entering into the apportionment formula of the instant tax are relevant, I have no occasion to decide whether they have been fully and properly applied, or whether

the tax regulations are in any way discriminatory or arbitrary so as to trespass on constitutional limitations.

Accordingly, I dissent from the majority holding that the tax under review is unconstitutional and void in its application to the petitioner in this proceeding.

DORE, J. P., COHN and VAN VOORHIS, JJ., concur with BREITEL, J.; CALLAHAN, J., dissents in opinion.

Determination annulled and a refund directed of the taxes paid for the years 1943, 1944 and 1945. Settle order on notice.