In the Matter of McCALL CORPORATION, Petitioner, against LAZARUS JOSEPH, as Comptroller of the City of New York, Respondent.

First Department, July 1, 1954.

*J. Bay Robinson* of counsel (*Robert E. Coulson* and *Ansley Kime* with him on the brief; *Whitman, Ransom & Coulson,* attorneys), for petitioner.

*Morris L. Heath* of counsel (*Stanley Buchsbaum* with him on the brief; *Adrian P. Burke, Corporation Counsel,* attorney), for respondent.

BOTEIN, J. This is a proceeding under article 78 of the Civil Practice Act for a review of a determination of the respondent, comptroller of the City of New York, in which he assessed petitioner with gross receipts taxes on advertising revenue for three annual periods beginning July 1, 1940, and ending June 30, 1943.

Petitioner is a Delaware corporation that publishes several magazines enjoying a national circulation. All but one of these magazines carry advertising from which petitioner derives substantial revenue. Its main office is located in the city of New York, and the issues of the various magazines are prepared and made up here. The magazines are printed, however, in Dayton, Ohio. Petitioner maintains advertising branches in New York, Chicago, Detroit, Boston, Los Angeles and San Francisco. The advertising department, located in the main office here, integrates and supervises the countrywide operations of these branches, approves all orders, edits copy and makes up the magazines. All advertising payments are received in the New York main office and deposited in New York banks.

Each advertising branch office has a defined territory. The New York branch (not to be confused with the New York main office) is responsible for and credited with orders from customers in the territory extending from New York State south to Florida. Solicitors working out of the New York branch office solicit business throughout this territory.

The advertising receipts thus attributable to the New York branch office constitute about 56% of petitioner's total advertising receipts.

The city's tax enabling acts for the years in question authorized it to impose taxes on the privilege of doing business in the city (L. 1940, ch. 245; General City Law, § 24-a, as enacted by L. 1941, ch. 199; L. 1941, ch. 200). The local law provisions applicable to the tax years under review (Local Laws, 1940, No. 78 of City of New York; Local Laws, 1941, No. 47 of City of New York; Local Laws, 1942, No. 27 of City of New York) contain provisions to the effect that when a receipt in its entirety cannot

be subjected to the tax because of constitutional provisions or any other provision of law, " the comptroller shall establish rules and regulations and/or methods of allocation and evaluation to the end that only that part of such receipt which is properly attributable and allocable to the doing of business in the city shall be taxed hereunder."

The assessments involved in this proceeding were made pursuant to a formula for the apportionment of advertising receipts contained in article 231 of the rules and regulations of respondent (Relating to the General Business and Financial Tax), which reads as follows:

" *Receipts from the sale of Advertising Space*

" *Article 231.*— The business of providing and selling advertising space in a newspaper, magazine or periodical and the preparation, printing and publication of the advertising matter therein is not deemed to constitute interstate commerce even though the publication is circulated outside the State of New York or the publication is printed at a plant located outside the State. Where the main office of the publisher is situated within the City of New York, the entire receipts from the sale of advertising space are to be included in the measure of the tax. However, where bona fide branch offices are maintained outside the City of New York, whether within or without the State of New York, for the solicitation and procurement of advertising contracts, a deduction from such gross receipts may be made for advertising contracts solicited or procured by officers and employees who work in, or from, or are attached to, such bona fide branch offices.

" Where a publisher's main office is located outside the City of New York and a bona fide branch office is maintained within the City, the receipts from advertising contracts solicited by officers or employees who work in, or from, or are attached to, the New York City office, are to be included in the measure of the tax."

Pursuant to article 231, respondent imposed a business tax for the years under review on a sum representing 56% of petitioner's total advertising receipts — in other words, on the gross receipts credited to the New York branch office, without any further allocation.

Article 231 was adopted as a result of the decision in *Western Live Stock* v. *Bureau* (303 U. S. 250 [1938]). In fact, there is an obvious attempt to stake the boundaries of assessment on advertising revenue to the full extent of the permissible limits

of the *Western Live Stock* decision; but we are of the opinion that respondent has mistakenly enlarged the range of the decision.

Western Live Stock was a trade journal which was wholly prepared, edited, published and printed in New Mexico and which had its only office and place of business in that State. The publication was circulated interstate and it carried some advertisements which were solicited and obtained out of the State from out-of-State advertisers. There was also interstate shipment by advertisers to the magazine of advertising cuts, mats, information and copy. Upon these facts the Supreme Court upheld a State privilege tax upon the amounts received by the magazine from the sale of advertising space.

But the basic elements of petitioner's business are not restricted to New York as closely as those of Western Live Stock were confined to New Mexico. In this case petitioner prints the magazines in Ohio. In the *Western Live Stock* case Mr. Justice STONE pointed out that " [a]ll the events upon which the tax is conditioned — the preparation, printing and publication of the advertising matter, and the receipt of the sums paid for it — occur in New Mexico and not elsewhere " (p. 260). The only activities that occurred outside the State which were not local activities were solicitation, circulation and the interchange of advertising materials. These, under the circumstances, were incidents of the sale of advertising which did not destroy its essential intrastate character.

Mr. Justice STONE saw that there was no potentiality for multiplication of local taxes which would place a cumulative and destructive burden on interstate commerce not borne by local commerce. He stated: " The tax is not one which in form or substance can be repeated by other states in such a manner as to lay an added burden on the interstate distribution of the magazine." (P. 260.) As was said in *Matter of United Air Lines* v. *Joseph* (282 App. Div. 48, 55). " It is significant too that the *Western Live Stock* case was a markedly liberal extension by the Supreme Court of its interpretation of the power of the States to apply local taxation to enterprises involved in interstate commerce, so long as there was no threat of a multiple tax burden."

Here, on the other hand, there are local activities in Ohio which could give that State jurisdiction to tax these advertising receipts by means of an allocated gross receipts tax to the extent that the local activities in Ohio constitute a part or share

of petitioner's total activity in obtaining and publishing the advertisements.

Thus, some danger of burdening commerce is presented. We cannot accept respondent's dismissal of the Ohio printing functions as such a minor element in the production of advertising revenue that any attempt by that State to tax such income would be doomed to failure. Accordingly, the allocation formula contained in article 231 should be further refined. The 56% of advertising receipts collected in New York should be taxable only to the extent that the related activities in New York City bear comparison to the total activities in connection with the preparation, printing and publication of petitioner's nation-wide advertising. It should be noted that receipts from the sales of the publications themselves in interstate commerce, as distinguished from sales of advertising, are allocable under article 211. This regulation governs generally the allocation of receipts from sales in interstate commerce by businesses; the usual factors of property, wages and receipts and their geographical bases are applicable. Under this formula the factors represented by the printing activities in Ohio would be properly weighted. There is no such provision in article 231 which preserves the constitutionality of that regulation.

Of course, before a local authority may apportion a tax on interstate commerce, it must first establish some distinct and separable local or intrastate business activity (*McLeod* v. *Dilworth Co.*, 322 U. S. 327; *Memphis Steam Laundry* v. *Stone*, 342 U. S. 389; *Hans Rees' Sons* v. *North Carolina*, 283 U. S. 123). Petitioner contends that advertising is an essential element of the business of publishing magazines and cannot be segregated from the general interstate character of its business. It cites a number of cases involving various violations of the Sherman Act and income tax laws (*Post Print. & Pub. Co.* v. *Brewster*, 246 F. 321; *Farmer's Guide Co.* v. *Prairie Co.*, 293 U. S. 268; *Fisher's Blend Station* v. *Tax Comm.*, 297 U. S. 650; *Lorain Journal* v. *United States*, 342 U. S. 143; *Times-Picayune* v. *United States*, 345 U. S. 594). These do not appear to have diminished the authority of the *Western Live Stock* case, which was cited only this year in *Michigan-Wisconsin Pipe Line Co.* v. *Calvert* (347 U. S. 157) in holding that interstate commerce must pay its way; and also that " a tax imposed upon a local activity related to interstate commerce is valid if, and only if, the local act is not such an integral part of the interstate process, the flow of commerce, that it cannot realistically be

separated from it '' (p. 166). Here the local activity sought to be taxed is substantial, and is distinct and separable from petitioner's interstate activities. However, for the reasons stated, article 231 of the comptroller's regulations as presently drawn is invalid and fails to provide an allocation of the tax that would be constitutional under the circumstances presented in this proceeding.

Accordingly, this matter should be remanded to the comptroller for appropriate action by him in accordance with this opinion.

Dore, J. P., Cohn, Callahan and Bastow, JJ., concur.

Proceeding unanimously remanded to the comptroller of the City of New York for appropriate action by him in accordance with the opinion herein. Settle order on notice.