In the Matter of NEW YORKER MAGAZINE, INC., Petitioner, against LAWRENCE E. GEROSA, as Comptroller of the City of New York, et al., Respondents.

First Department, December 11, 1956.

*Phillip W. Haberman, Jr.,* of counsel (*Wilbur H. Friedman* and *Gerald Silbert* with him on the brief; *Proskauer, Rose, Goetz & Mendelsohn,* attorneys), for petitioner.

*Morris L. Heath* of counsel (*Stanley Buchsbaum* with him on the brief; *Peter Campbell Brown, Corporation Counsel,* attorney), for respondents.

BREITEL, J. Petitioner, a taxpayer, brings this proceeding, under article 78 of the Civil Practice Act, to review a determina-

tion of the Comptroller of the City of New York which denied claims for refund of and assessed additional city gross receipts taxes for 1947, 1948 and 1949 (General City Law, § 24-a; Local Law, 1946, No. 14 of City of New York; Local Law, 1948, No. 44 of City of New York; Administrative Code, ch. 41, tit. RR; ch. 46, tit. B).

The taxpayer is the publisher of a national magazine. The magazine is published and edited out of taxpayer's principal office in New York City, although it is printed, under independent contract, in Connecticut. Its circulation extends, in substantial measure, beyond the borders of the city and its advertising is predominantly national in character. The city has imposed its tax, which is for the privilege of doing business locally, to cover the bulk of the advertising receipts of the taxpayer. The only part excepted is that which is solicited through the Chicago office of the taxpayer, the receipts from which solicitation are also collected through that office. Significantly, receipts from circulation are allocated on an intracity and out-of-city basis. The taxpayer urges that it is entitled to have its advertising receipts similarly allocated. The city responds that the activity of publishing a magazine is a completely localized one and that advertising receipts, even though from national advertising, are local receipts.

The determination of the comptroller should be confirmed.

This court quite recently passed upon the problems of local privilege taxation involved in the publication of a national magazine (*Matter of McCall Corp.* v. *Joseph,* 284 App. Div. 484). It was there held that the publication of a magazine was a localized activity and that advertising receipts, even if from national advertising, were subject to local privilege taxation. Distinction was made, however, on the basis that the taxpayer in the *McCall* case did its printing in its own plant in the State of Ohio. As a consequence, it was determined that the unitary operation of publishing, editing, and printing a magazine, in that case, extended into Ohio. As a consequence, the city was required to make a new allocation in which proper recognition would be given to the several factors of property, wages and receipts, and their geographical basis.

In so holding, this court relied upon *Western Live Stock* v. *Bureau* (303 U. S. 250), in which it had been held that the publication, editing, and printing of a magazine is a localized activity subject to local privilege taxation.

It is now urged by the taxpayer in this case that no recognition has been given by the city, and in effect in the *McCall* case,

to the interstate character of advertising which appears in a national magazine. The bulk of the advertisers are located outside the State. They transmit to the taxpayer material for inclusion in advertisements. The advertising is solicited, for the most part, outside the State. It is also argued that the rule in the *Western Live Stock* case no longer has the vitality that it once had; that now, under later decisions of the United States Supreme Court, the protection of the commerce clause has been extended to intangibles and contracts that flow in interstate commerce. In this connection the taxpayer urges the overturn of the rule of *Paul* v. *Virginia* (8 Wall. [75 U. S.] 168), and similar cases, by the later case of *United States* v. *Underwriters Assn.* (322 U. S. 533), and still later cases that followed in its train, like *Lorain Journal* v. *United States* (342 U. S. 143), in which last case explicit reference was made to the fact that national advertising moved in interstate commerce and, therefore, was subject to the Federal antitrust laws.

Taxpayer, if this analysis be sound, does not meet the issue involved in local privilege taxation. There is no question that national advertising activities involve a movement in interstate commerce. But the same condition exists with regard to any concededly local enterprise, such as manufacturing, in which the products are eventually sold and delivered in interstate commerce. The fact that the product, or a service, of an enterprise, otherwise local, eventually moves in interstate commerce does not prevent local privilege taxation. Similarly, the fact that there are earlier incidents in interstate commerce, such as preparatory promotion and selling, do not detract from the inherently localized character of the enterprise in producing goods or services.

This is now old and unquestioned law (e.g., *Memphis Steam Laundry* v. *Stone,* 342 U. S. 389; *McLeod* v. *Dilworth Co.,* 322 U. S. 327; *Hans Rees' Sons* v. *North Carolina,* 283 U. S. 123; *Matter of United Piece Dye Works* v. *Joseph,* 282 App. Div. 60, affd. 307 N. Y. 780, cert. denied 348 U. S. 916; cf. *United Air Lines* v. *Joseph,* 282 App. Div. 48, affd. 307 N. Y. 762).\*

---

\* Thus, also, in *Western Live Stock* v. *Bureau* (303 U. S. 250, 253, *supra*) the court said: "Nor is taxation of a local business or occupation which is separate and distinct from the transportation and intercourse which is interstate commerce forbidden merely because in the ordinary course such transportation or intercourse is induced or occasioned by the business."

None claims this is a matter of tight logical distinctions, or that the distinction is derived from the very nature of things. So in the *Western Live Stock* case, Mr. Justice (later Chief Justice) STONE said: "Practical rather than logical distinctions must be sought." (P. 259.)

Indeed, the *United Piece Dye Works* case involves the converse fact situation of that here, but the principle applied is identical. In the *Dye Works* case petitioner conducted an extensive textile processing establishment in New Jersey. Its office in New York was devoted to the solicitation and promotion of business in New York City, for textile processing in New Jersey, and, indeed, there was a rather intensive servicing in that promotional activity. It was held that this activity was in interstate commerce, was not localized, and, therefore, was not subject to local privilege taxation by New York City. By the same reasoning, however, it was perfectly clear that Dye Works' activity in New Jersey would be completely subject to local privilege taxation in that State, even though its promotional activities and its services moved in interstate commerce.

The sale of advertising, and the receipts from such sales by the taxpayer in this case, are no different, for the purposes of local privilege taxation, than the solicitation, sale and delivery, in interstate commerce, of a manufacturer's products otherwise arising from exclusively local activity. On this analysis the holding of the *Western Live Stock* case is still sound law, and in accord with basic cases on this question in the United States Supreme Court (*Memphis Steam Laundry* v. *Stone,* 342 U. S. 389, *supra*; *McLeod* v. *Dilworth Co.,* 322 U. S. 327, *supra*; *Hans Rees' Sons* v. *North Carolina,* 283 U. S. 123, *supra*). The *Underwriters Assn.* case (322 U. S. 533, *supra*) and the *Lorain* case (342 U. S. 143, *supra*) marked no change from the traditional view that a localized activity is subject to local privilege taxation despite the fact that its products or services move in interstate commerce. These cases hold no more than that under the power conferred by the commerce clause the Federal Government may legislate with respect to keeping channels of interstate commerce free and unobstructed. From this it does not follow that a localized activity ceases to be localized, because its products and services eventually move in interstate commerce, or because, again, there are earlier incidents in interstate commerce, such as promotion and solicitation.*

The matter of multiple taxation which was regarded as so grave a danger in the *Western Live Stock* case (303 U. S. 250,

---

* Indeed, one must caveat the application of cases which arise from questions involving Federal power to regulate interstate commerce, to the problem of local privilege taxation, jurisdiction for purposes of serving process, power of a State to impose property or other nonprivilege taxes on property, products, or services moving in interstate commerce, or any other area not specifically concerned with local privilege taxation.

*supra*) may arise when we have local privilege taxation imposed upon a localized enterprise which moves its products or services in interstate commerce. Thus, that danger was present in the *United Piece Dye Works* case (282 App. Div. 60, affd. 307 N. Y. 780, *supra*), but only if it had been found that Dye Works' activities in New York City had become sufficiently localized to be subject to local privilege taxation. It was unqualifiedly present in the *McCall* case (284 App. Div. 484, *supra*). In the *McCall* case the danger arose because the taxpayer, in its unitary operation and ownership, had a localized activity in the State of Ohio as well as in New York. In this case the fact that taxpayer's printing is done in the State of Connecticut does not create that danger, because the printing is done under independent contract, and there is no localized ownership (and therefore activity) of an integral part of the unitary operation of publishing, editing and printing a magazine. The localized activity there, then, becomes that of the printer, rather than of this taxpayer. To the point urged by the taxpayer here, that it warehouses large quantities of paper in Connecticut in order to serve its printer and may, therefore, be subject to local taxation in Connecticut, it must be assumed that any such local taxation, to be valid, could not be a privilege-of-doing-business tax, although it might be a property tax, or tax based on use, or other nonprivilege local tax.

So, in summary, as was stated in the *United Piece Dye Works* case (282 App. Div. 60, 62, *supra*): "It has been held many times and the city so concedes that, where one is in one State, the mere selling of merchandise or services in another State does not subject one to tax jurisdiction in the other State." Analogously, the selling of advertising in another State and the receiving of income therefrom does not subject one to tax jurisdiction in the other State. If that be true, then the activity of publishing a magazine remains localized in the State or the city where the enterprise is located physically, and, by similar logical extension, there is no danger of multiple taxation. Hence, this court said, in the *McCall* case (284 App. Div. 484, 488, *supra*), with unmistakable clarity, with reference to a magazine: "The only activities that occurred outside the State which were not local activities were solicitation, circulation and the interchange of advertising materials. These, under the circumstances, were incidents of the sale of advertising which did not destroy its essential intrastate character." True, the court was analyzing the *Western Live Stock* case, but it was expressing a general principle and following it.

A minor point is involved in this case. It is conceded by the city that it imposed excessive interest penalties in the amount of $186.13. But since the parties have stipulated that, regardless of the outcome of this appeal, the excess payment will be refunded, no modification of the determination of the comptroller is required.

With regard to the imposition of penalties and interest, except as otherwise stipulated by the parties, it is found that the comptroller acted properly within his power and discretion.

The determination should be confirmed.

PECK, P. J., COX, FRANK and VALENTE, JJ., concur.

Determinations unanimously confirmed, with $50 costs and disbursements to the respondents, and the petition dismissed.