281 P.2d 654

**ALBUQUERQUE BROADCASTING COM-
PANY, a Corporation, Appellee,**

v.

**BUREAU OF REVENUE of the State of
NEW MEXICO, Mike Gallegos, Commis-
sioner of said Bureau, and J. B. Contreras,
Director of the School Tax Division of
said Bureau, Appellants.**

No. 5833.

Supreme Court of New Mexico.

Feb. 21, 1955.

Rehearing Denied April 15, 1955.

Albert I. Cornell, Albuquerque, Chester A. Hunker, Santa Fe, for appellants.

Hannett & Hannett, A. T. Hannett, G. W. Hannett, W. S. Lindamood, Albuquerque, for appellee.

SADLER, Justice.

This appeal is an aftermath of several others which occupied the time and attention of the district court of Santa Fe County and the Supreme Court in the late forties and the early part of 1950. The history of the previous litigation with its train of opinions, either original or on motion for rehearing, may be found under the same title as borne by this appeal, namely, Albuquerque Broadcasting Co. v. Bureau of Revenue, 51 N.M. 332, 184 P.2d 416, 11 A.L.R.2d 966; opinion denying motion for rehearing, 51 N.M. 356, 184 P.2d 431; and on second appeal of same case, under like title, the opinion will be found at 54 N.M. 133, 215 P.2d 819. The last appearance of the controversy between the parties, though involving the questioned tax paid under protest by plaintiff (appellee) for a different period of time, will be found reported at 54 N.M. 165, 216 P.2d 698.

The first three opinions, two original and one on denial of motion for rehearing on first appeal, involved the same cause of action seeking recovery of taxes paid under protest over the same period of time. The last appeal disposed of sought recovery of taxes paid under protest over a different period or periods of time and represented a different cause or causes of action from those involved on the two former appeals. Fundamentally, though, the issue in every appeal was identical and the very same, namely, could the plaintiff be made to pay the tax on what was designated local advertising broadcasts originating in local studios of K.O.B. at Albuquerque but heard in all sixteen states serviced by K.O.B? The answer in each case was that it could.

Now, into this Court for the fourth successive time comes the same plaintiff and again complains of the same tax. This

time, however, it comes as an appellee though a plaintiff below, and defends a judgment of the same court in which all the other appeals originated. The judgment is based on conclusions of law deduced from facts not substantially different, in material respects, from those present on the other appeals. Strangely, the decisive conclusion announced by the trial court in the present case is diametrically opposed to those announced by this Court on the first two of the former appeals and in no manner disapproved in our opinion on the third of said appeals, namely, that plaintiff (appellee) is subject to the tax on intrastate business.

Three important conclusions made by the trial court in the present case, with the first and second of which we agree, and disagree on the third, are as follows:

"4. That the business of the plaintiff originating in its local studio is partially interstate and partially intrastate.

"5. That to tax the interstate business of the plaintiff originating in its local studio is an interference by the State of New Mexico with the freedom of interstate commerce.

"6. That it is impossible to determine with any accuracy what business originating in plaintff's local studio is interstate and which is intrastate."

It is quite impossible to have a clear understanding of the conclusions reached by us in the group of decisions listed above without a continuous and uninterrupted reading of them in the order and sequence in which such opinions were filed. In the first of them, Albuquerque Broadcasting Co. v. Bureau of Revenue, 51 N.M. 332, 184 P.2d 416, 429, 11 A.L.R.2d 966, we drew certain pertinent conclusions on the facts found after an extended and exhaustive review of the applicable authorities, primarily, decisions of the Supreme Court of United States. Former Chief Justice Brice, speaking for the Court, said:

"We conclude from these decisions:

"(1) The states cannot lay a direct tax on interstate commerce or gross receipts therefrom. Fisher's Blend Station v. Tax Commission, supra [297 U.S. 650, 56 S.Ct. 608, 80 L.Ed. 956]; Puget Sound Stevedoring Co. v. State Tax Commission, supra [302 U.S. 90, 58 S.Ct. 72, 82 L.Ed. 68]; Gwin, White & Prince v. Henneford, supra [305 U.S. 434, 59 S.Ct. 325, 83 L.Ed. 272]; Freeman v. Hewit, supra [329 U.S. 249, 67 S.Ct. 274, 91 L.Ed. 265].

"(2) There are various means of taxing interstate commerce by indirection so that it will bear its just share of state taxation. Freeman v. Hewit, supra.

"(3) If an intrastate incident is sufficiently disjoined from interstate commerce though indirectly a burden thereon, it may be a 'taxable event,'

open to state taxation, if it does not discriminate against interstate commerce. Western Live Stock v. Bureau of Revenue, supra [41 N.M. 141, 65 P.2d 863]; McGoldrick v. Berwind-White Coal Mining Co., supra [309 U.S. 33, 60 S.Ct. 388, 84 L.Ed. 565]; Nelson v. Sears, Roebuck & Co., supra [312 U.S. 359, 61 S.Ct. 586, 85 L.Ed. 888]; [State of] Wisconsin v. J. C. Penney Co., supra [311 U.S. 435, 61 S.Ct. 246, 85 L.Ed. 267]; General Trading Co. v. [State] Tax Commission, supra [322 U.S. 335, 64 S.Ct. 1028, 88 L.Ed. 1309]; International Harvester Co. v. Department of Treasury, supra [322 U.S. 340, 64 S.Ct. 1019, 88 L.Ed. 1313]; Department of Treasury v. Allied Mills, supra [318 U.S. 740, 63 S.Ct. 666, 87 L.Ed. 1120]; Southern Pacific Co. v. Gallagher, supra [306 U.S. 167, 59 S.Ct. 389, 83 L.Ed. 586].

"(4) A valid state tax may be levied upon intrastate communications though the facilities used are also used in interstate commerce. Ratterman v. Western Union Tel. Co., 127 U.S. 411, 8 S.Ct. 1127, 32 L.Ed. 229.

* * * * * *

"The third class of broadcasts is described in the findings as 'Local advertising broadcasts which originate locally in the studio of KOB at Albuquerque but are heard in all sixteen states.' It is a matter of common knowledge that most, if not all of such broadcasts are local advertising of merchandise or other businesses that are of interest only to local people, notwithstanding such broadcasts may be heard by people in other states not interested in the advertising. Such also are broadcasts of local political parties and candidates, addressed to the state's electorate. It is only the fact that the range of radio, unlike communications by telegraph or telephone, is limited only by the power employed in broadcasting, that it may be heard by people to whom the message is of no interest. *As a practical matter this business is intrastate.*" (Emphasis added.)

Our first opinion following submission, closed with the following declarations:

"We are of the opinion that local advertising by radio for local business is subject to the tax, (1) because it is intrastate business, and (2) in any event the advertising of local business to secure local patronage is a 'taxable event' open to the states. Western Live Stock v. Bureau of Revenue, supra. The appellee should be permitted to retain the receipts collected from taxes laid on appellant's intrastate business, the amount of which can be determined at another trial. Ratterman v. Western Union Tel. Co., supra.

"The judgment is reversed and cause remanded with instructions to

the district court to set aside its judgment, grant appellant a new trial, and proceed therein not inconsistent herewith."

Disagreeing with the conclusions we reached, the plaintiff (appellant) moved for rehearing. In denying the motion for rehearing, our opinion filed among other things, said:

"Appellant brought this action to recover back from appellee approximately $25,000 paid by it under protest, on account of taxes levied against its gross income as a corporation engaged in the business of radio broadcasting. The burden was upon appellant to prove that it was entitled to the return of this money; and to that end must have secured findings of fact from the trial court that would support a judgment therefor. If it failed to establish that it was entitled to any portion of the funds claimed, then its case to that extent failed.

"The findings of the Court are very explicit regarding interstate broadcasting. The pleadings as well as.the findings segregate the interstate business from the local business, except as to amount. It is admitted in the complaint, and found by the Court, that the appellant was engaged in 'local advertising broadcasts which originate locally in the studio of KOB.' There is nothing in the findings, or in the evidence for that matter to indicate that any of this local business is interstate. *To that extent the appellant's case failed of proof, unless we must say that all broadcasting is interstate business, and to this we do not agree.*

\*    \*    \*    \*    \*    \*

"The burden was on the appellant to show that the whole tax was void. It segregated the taxable from its nontaxable activities in its pleadings and briefs, and sufficiently presented the question, for our consideration. Under similar facts the Supreme Court of the United States reached the same conclusion. Ratterman v. Western Union Tel. Co., 127 U.S. 411, 8 S.Ct. 1127, 32 L.Ed. 229. We are of the opinion that appellant did not establish its right to the return of funds collected as taxes on local broadcasting." (Emphasis added.)

Thus the matter stood, so far as the records in this Court disclosed, until the record in the case of Albuquerque Broadcasting Co. v. Bureau of Revenue, 54 N.M. 133, 215 P.2d 819, was filed in this Court. In our opinion on that appeal, we stated:

"This is the second appeal of this case. For the purpose and nature of this action see Albuquerque Broadcasting Co. v. Bureau of Revenue, 51 N.M. 332, 184 P.2d 416, 431 [11 A.L.R.2d 966]. The appellant and appellee in the first appeal have their status as

litigants reversed in this, the second appeal. In the former appeal the judgment was reversed and cause remanded with instructions. The original opinion provided: 'The judgment is reversed and cause remanded with instructions to the district court to set aside its judgment, grant appellant a new trial, and proceed therein not inconsistent herewith.' "

We then quoted the mandate in full, and continued:

"The new trial was limited to entering judgment for the appellant Broadcasting Company (appellee here) for the money paid by it as taxes, less the amount paid for local broadcasting. The amount for which judgment was ordered to be entered was easy of determination. But in violation of this Court's mandate, the district court permitted the plaintiff to amend its complaint, and then proceeded to try the whole case anew. From the new evidence introduced (some 500 pages) the district court came to the conclusion that this court had erred, and thereupon entered judgment against defendant for the whole sum sued for, in direct violation of the opinion and mandate of this court.

"Our opinion was, and is, the law of the case, which the district court must strictly follow, State ex rel. Del Curto v. District Court, 51 N.M. 297, 183 P.2d 607; and in case there is any conflict between this Court's opinion and its mandate, the mandate must give way to the opinion. First National Bank of El Paso [Tex.] v. Cavin, 28 N.M. 468, 214 P. 325. As there could be no new trial of the issues, no amendment of the complaint was authorized, City of Orlando v. Murphy, 5 Cir., 94 F.2d 426.

"The judgment is reversed and cause remanded to the district court with instructions to set aside its judgment; and thereafter enter the following orders:

"(1) Striking plaintiff's (appellee's) amended complaint from the files.

"(2) Striking all proceedings (except the order setting aside the original district court judgment) had by the trial court after the filing of the mandate of the Supreme Court in the first appeal.

"After such orders are entered then proceed to take an accounting *for which alone* evidence shall be introduced, and determine and make the following findings of fact:

"(a) The amount of the taxes received on account of all broadcasting programs denominated in our original opinion:

" '(a) Network programs supplied by national network broadcasting companies through the State of New Mexi-

co on the interstate wires of the American Telephone and Telegraph Company, which wires are tapped by KOB at Albuquerque. These chain broadcasting companies' programs so transmitted and tapped originate in studios maintained in other states and countries.

" '(b) National spot advertising which is a program supplied by national advertisers and reaches the studio of the plaintiff for broadcasts by means of transcription from outside of New Mexico, or by phonograph records or transcriptions transmitted in interstate commerce from other states to the KOB studio for broadcasting.'

"(b) Determine the amount of tax money paid by appellee to appellant as taxes on local advertising broadcasts which originated locally in the studios of appellee.

"After finding the above facts, enter judgment for the appellee for the amount of tax money paid on broadcasts determined in our original opinion to be interstate, with interest, if any, provided by law; and deny recovery by appellee of money paid by it as taxes on local advertising broadcasts which originated locally in appellee's studios.

"We held in the first appeal that all local broadcasting is not necessarily interstate commerce merely because such broadcasts may be heard beyond the borders of a state; and that the burden was on appellant (appellee here) to establish a right to the return to it of the tax money, or some part of it, which it paid to the state under protest. This burden appellant did not meet as to local broadcasts. It rested its case wholly upon the assumption that *all broadcasting,* local or otherwise, over its station was interstate commerce; which we held, and now hold is not necessarily true. *There is no finding or evidence indicating that any of the local broadcasts over KOB was interstate commerce.* See Albuquerque Broadcasting Co. v. Bureau of Revenue, supra; Western Live Stock v. Bureau of Revenue, 303 U.S. 250, 58 S.Ct. 546, 82 L.Ed. 823, 115 A.L.R. 944; Beard v. Vinsonhaler, 215 Ark. 389, 221 S.W.2d 3; appeal to the Supreme Court of the United States was dismissed 'for want of a substantial Federal question.' Vinsonhaler v. Beard, 338 U.S. 863, 70 S.Ct. 146, 94 L.Ed. 529.

"Reversed and remanded with directions." (Last emphasis supplied.)

The last case disposed of in this Court between these same parties appears under the same title as those which preceded it, namely, Albuquerque Broadcasting Co. v. Bureau of Revenue, and is reported at 54 N.M. 165, 216 P.2d 698. It turned wholly upon the question whether the plaintiff was barred from prosecuting it under the doctrine of res adjudicata, all other defenses

having been waived. We held that, notwithstanding the fact that it was between the same parties, since the complaint sought recovery of the questioned tax paid over a different period and in varying amounts, the causes of action sued upon were not the same. Hence, the doctrine of res adjudicata to bar prosecution of the suit altogether could not be invoked, even though as to some facts found, it might have been held applicable, if properly pleaded. The judgment of the trial court denying the plea of res adjudicata was affirmed by this Court. What became of the case thereafter we have no means of knowing, since no further proceedings relative to it were had in this Court.

The plaintiff below, appellee here, mindful of the declarations of law in the former decisions of this Court on the basic issue presented on this appeal seek at the very outset to forestall the treatment of those cases as precedents in an early paragraph in their answer brief, reading as follows:

"In the case at bar the various complaints allege that the business paid for in the local studio is interstate. The appellee filed a general denial. Appellee did not plead that the decision in the original case, reported in 51 N.M. 332 [184 P.2d 416, 11 A.L.R.2d 966], was either the law of the case, res judicata, nor did appellants challenge either the sufficiency of the complaints or plaintiff's evidence."

We may as well now, and before going further, state our position on this matter. We shall make no application of the familiar doctrine of the "law of the case," nor that of res adjudicata. Nevertheless, we decline to blind ourselves to the fact that these same parties over the past five years have been litigating the validity of the questioned tax before this Court in its application to plaintiff's business. Accordingly, and to the extent that we have made declarations of law on similar facts, such declarations will be treated by us as rules of decision and given the same force and effect, as if pronounced on appeals by entirely different parties. Having thus stated our position on this matter we may now proceed to dispose of this appeal. Stare decisis abides with us still.

We wish to state again what was said near the beginning of this opinion that the judgment before us for review on appeal is based on conclusions deduced from facts "not substantially different, in material respects, from those found by the court" in the former appeals. Naturally, the appellee will take strong exception to this statement. Indeed, its counsel already have done that very thing by reminding us of findings touching other kinds of taxes paid by appellee's Station K.O.B., the distinction between telephone and telegraph messages and radio for purposes of excise taxation, the difficulty of determining what advertisers, in using its facilities, are seeking

intrastate business only; and, in substance, a finding that the appellee's intrastate business, originating in its Albuquerque office, is so interwoven and integrated with its interstate business, as to render it impossible to tax the one without taxing the other and thereby unduly burdening it.

Other findings too numerous to mention are made but, by and large, all leave the basic finding which controlled on the former appeal an indisputable fact on this one, namely, that the business of the plaintiff originating in its local studio "is partially interstate and partially intrastate" with a difference in its conclusions directly opposite to each other. On the same basic fact, just recited, we held and declared on former appeal that appellee was subject to the tax invoked against it on its intrastate business, namely, under 1953 Comp. § 72–16–4, subd. G. Whereas, on that same basic fact the district court in case at bar held, in substance, that any effort to determine with a practical degree of accuracy what business originating in appellee's local studio was interstate and what was intrastate presented an insuperable and impossible task. Hence, none of the receipts were taxable. So ruled the court, because the tax imposed would amount to a gross receipts tax on the privilege of engaging and continuing in the business of broadcasting by radio and television, thereby falling within the interdiction of a whole train of authority, much of which is cited and discussed in our former opinions.

It is interesting and helpful to compare the findings in the present case with those made in the trial out of which the first of the former appeals arose. So far as any difference is concerned, findings 1 to 8 of the present case might have been lifted bodily from the findings of corresponding numbers on the former appeal. Most of them are in haec verba and any difference detected in others is minor and unimportant. When we come to paragraph 9 of the findings in the two cases, however, a change is noticeable and pronounced. It is the one dealing with the different types of advertising. In each case, subparagraphs (a) and (b) of paragraph 9 identify the first two types of advertising, as follows:

"(a) Network programs supplied by national network broadcasting companies;

"(b) National spot advertising which consists of programs supplied by national advertisers;"

except that on former appeal so much of the identification as appears next above in each instance is followed by brief explanatory matter of the manner in which the type of advertising discussed reaches K.O.B. studio in Albuquerque for broadcasting. This explanatory matter is omitted from subparagraphs (a) and (b) in the case at bar.

Then follows the finding in each case with which we are here chiefly concerned, namely, subparagraph (c) of paragraph 9, identified in findings on former appeal as "Local advertising," in following language and manner, to-wit:

"(c) Local advertising broadcasts which originate locally in the studio of KOB, but are heard in said sixteen other states."

It is interesting to contrast the brief and succinct description of "Local advertising" as set forth in the findings on former appeal as subparagraph (c) of paragraph 9 with the greatly amplified treatment accorded it on the corresponding subparagraph of paragraph 9 in the case at bar. Here it is, as it appears in its expanded form in the case at bar, to-wit:

"(c) Advertising, the contracts for which are made locally in the studio with advertisers who either do business locally and nationally or who do business locally and avail themselves of the extensive coverage of KOB rather than using smaller stations at lower rates because KOB reaches potential customers in sixteen states, and for the purpose of stimulating their interstate business, and further that 66⅔% or more of the advertising contracts which are entered into locally advertise national brands of merchandise and are paid for cooperatively by the local retailers and the manufacturer or dis-

tributor of the national brands, and that included in said broadcasts are broadcasts of weather reports covering neighboring states and news broadcasts accumulated by the Associated Press and the United Press of news, national and international, which news reaches the studio of the plaintiff over interstate communications lines. That music is broadcast by the station on which the plaintiff pays copyright charges to out-of-state copyright owners, e. g., for the month of November, 1951, plaintiff paid the American Society of Composers, Authors, and Publishers the sum of $617.43, Broadcast Music, Inc., the sum of $208.57, and Society of European Stage Actors and Composers, Inc., the sum of $27.50."

■ As shown above, it required only three lines in subparagraph (c) of paragraph 9 of findings on former appeal to describe, or catalogue, local advertising broadcasting. On this appeal, where interstate implications unmentioned in corresponding paragraph of fromer appeal are emphasized and set out at length, local characteristics being ignored, ten (10) times the space for same purpose is required. But in whatever dressing description of such contracts appears, the hard core fact remains that the appellee (plaintiff) does furnish local advertising to its customers both by radio and television broadcasts and it can not and should not escape its just obligation to pay

the questioned tax just as do all others subject thereto.

Not a day passes that we do not hear broadcast over K.O.B., appellee's station in Albuquerque, advertisements that are wholly local in character extolling the virtues of this or that merchandise, television sets, roofing material, cosmetics, cigarettes and tobaccoes, dairy products, clothing, ladies' dresses, men's wear, carried in stock by various local merchants. These advertisers do not have any thought of reaching customers in the sixteen other states over which K.O.B. extends its coverage. Distance alone prevents and denies them any revenue from the fact that the broadcasts may be heard in such distant territory. But is the fact that they are so heard to deny the state the right to impose and collect the tax on purely intrastate business? We think not. No more so than in Western Live Stock v. Bureau of Revenue, 303 U.S. 250, 58 S.Ct. 546, 82 L.Ed. 823, was validity of the tax denied by the fact that newspaper advertisements of purely local character and so intended were carried over state lines in the circulation of a monthly livestock trade journal, even though national brands of merchandise were advertised therein.

It is interesting to note that the plaintiff does not challenge the finding that the business of plaintiff originating in its local studio in Albuquerque is partly intrastate and partly interstate. We had so held on similar facts in the group of Albuquerque Broadcasting Company cases, mentioned hereinabove. The evidence there and here was so overwhelming that the business originating in its local studio was of both kinds that plaintiff, no doubt, felt itself confronted by a hopeless task to assail that proposition.

The only defense left, then, against application of the tax to its local business arises on the contention that the two classes of business are so merged and integrated that to collect the tax on intrastate business, the existence of which it can not dispute and as the trial court expressly found, casts such a burden on that arising from its strictly interstate business as to render the imposition and collection of the tax invalid. Even this contention is further refined by the claim embodied in one of the trial court's conclusions that it is impossible to tell with any accuracy what portion of its business originating in its local studio is interstate and what portion intrastate. We were confronted with no such difficulty in the two former appeals. Indeed, as our opinion on motion for rehearing in first appeal recites:

> "The burden was on the appellant to show that the whole tax was void. It segregated the taxable from its non-taxable activities in its pleadings and briefs, and sufficiently presented the

question, for our consideration." [51 N.M. 332, 184 P.2d 432.]

While the evidence on the question may not be exactly the same there and here, no great difficulty is to be apprehended in segregating the taxable from the non-taxable business. Any discerning analyst auditing plaintiff's books should be able to tell with almost unerring accuracy what business fairly classifies as intrastate and what interstate. There is some local business so obviously intrastate that it is pure sophistry to contend otherwise. The radio and television advertising during any political campaign preceding a statewide election reaches astronomical proportions. No argument, however ingenious, could convince that such advertising is interstate in character, or that taxing the proceeds thereof places any kind of burden on interstate commerce. And, yet, under the judgment entered herein the proceeds of such advertising enjoy an immunity from the tax.

In like fashion an advertisement for the sale of children's shoes or clothing or any other merchandise by a purely local concern, even though some of such advertisements embrace merchandise having a national brand, is not to be denominated interstate in character simply because, as an inevitable consequence of the broadcast, it is heard across state lines and in states far removed. All like transactions such as those mentioned, in the broadcast of a ten-day sale, for instance, by any mercantile establishment even though in the broadcast merchandise with a national brand may be mentioned and its virtues extolled, are purely local in character and no more constitute interstate business and commerce than if the waves of ether on which they ride were grounded at state lines. They simply become functus officio, and wholly innocuous, once carried beyond range of the trade territory of the local studio, whether intrastate or interstate.

As to broadcasts of any such advertisements of a local studio situated practically on the borderline of a state, the resultant burden on interstate commerce within the intendment of the federal constitution would be so minor as ordinarily to classify in the law as de minimis; or, if not felt so to be, immunity from the tax with respect thereto could readily be granted. Here we deal only with the problem as peculiar to K.O.B., so far as considered from a geographical standpoint.

We repeat what we have said on former appeals, either the conclusions we reach on this subject are sound and correct, or the states are powerless to make broadcasting companies bear their just share of state taxation and no privilege tax can be laid upon them, regardless of how obviously and demonstrably one phase of their activities sought to be made the basis and measure of the tax falls within an established cate-

gory of intrastate business. We find nothing either in Fisher's Blend Station v. Tax Commission, 297 U.S. 650, 56 S.Ct. 608, 80 L.Ed. 956, or the rationale upon which it rests, which condemns the conclusions we reach. On the contrary, we see in Ratterman v. Western Union Tel. Co., 127 U.S. 411, 8 S.Ct. 1127, 32 L.Ed. 229; Western Live Stock v. Bureau of Revenue, supra; Freeman v. Hewit, 329 U.S. 249, 67 S.Ct. 274, 91 L.Ed. 265, some support for the position we take. See, also, Braniff Airways v. Nebraska State Board of Equalization, 347 U.S. 590, 74 S.Ct. 757, 98 L.Ed. 415.

Before closing, we should notice a case on which counsel for defendant place much reliance, namely, Lorain Journal Co. v. United States, 342 U.S. 143, 72 S.Ct. 181, 184, 96 L.Ed. 162. In it the court was concerned with a civil proceeding against a daily newspaper at Lorain, Ohio, to enjoin its acts against a local radio station said to constitute a combination and monopoly in restraint of interstate commerce in violation of § 1 of the Sherman Antitrust Act, 15 U.S.C.A. § 1, and as amounting to a conspiracy to monopolize such commerce in violation of § 2 of said Act. The gist of the complaint was that the Journal Company was engendering boycott against such of its advertisers as patronized the local radio station. The plaintiff felt it essential in maintaining the suit to show that the radio station itself, as well as the publisher, was engaged in interstate commerce. Now, this is something which all concerned in the case at bar take for granted and which no one here even so much as disputes.

In the Lorain Journal case, however, the one factor which might have been seized upon by the defendant here as giving it aid and comfort, the court there declined to pass upon, namely, that the Journal's intrastate and interstate business were so interwoven as to justify classifying the publisher's entire operation as one in interstate commerce. Note this language from the court's opinion, to-wit:

"There is a suggestion that the out-of-state distribution of some copies of the Journal, coupled with the considerable interstate commerce engaged in by its publisher in the purchase of its operating supplies, *provided, in any event, a sufficient basis for classifying the publisher's entire operation as one in interstate commerce.* It is pointed out also that the Journal's daily publication of local news and advertising was so inseparably integrated with its publication of interstate news and national advertising that any coercion used by it in securing local advertising inevitably operated to strengthen its entire operation, including its monopoly of interstate news and national advertising.

"*It is not necessary, however, to rely on the above suggestions. The findings go further.* They expressly and unequivocally state that the pub-

lisher's conduct was aimed at a larger target—the complete destruction and elimination of WEOL." (Emphasis ours.)

Of course, we are bound by a decision of the nation's highest court on the question whether the tax our state has imposed, constitutes an undue burden on interstate commerce, or any burden at all.

■ We are not unmindful of this limitation on our own power. But if only the proceeds of plaintiff's Station K.O.B. arising on the broadcasting of purely intrastate advertisements are made the measure of the tax, obviously, it lays no burden at all on interstate commerce. Counsel for plaintiff will not question the correctness of this statement. Hence, somehow, in some manner, by some means, they simply must place their client outside its proper application. This they seek to do by asserting the two types of broadcasting are so integrated, so much a part of each other, that it is impossible to unscramble them to apply the tax.

Let us see if, actually, there be any basis for this claim. The record before us is clear and convincing on one fact, namely, that the plaintiff's business originating in its local studio is "partially interstate and partially intrastate." We have said above that during a statewide political campaign large sales of time for broadcasting are made not only to the political parties themselves but as well to individual candidates. The mere statement of this fact carries its own proof. It is positively futile for plaintiff to claim it cannot segregate and identify proceeds of such purely intrastate advertising. The same can be said of advertising by radio of its products by a local dairy, poultry farm, truck garden, and other local concerns too numerous to mention.

Even if we should hold that broadcasts of merchandise having a national brand, carried on a broadcast otherwise purely local in character, would convert same into an interstate transaction (and we have held it would not under the facts here present), there yet remains a broad field in which a multitude of advertising broadcasts, admittedly local in character, take place daily. The plaintiff receives substantial sums for these broadcasts. It knows how much, by whom paid, and can easily furnish to the Bureau of Revenue a complete and accurate statement of such proceeds. It strains one's credulity to the breaking point to accept plaintiff's statement to the contrary. We find nothing in Lorain Journal Co. v. United States, supra, or any other decision, state or federal holding the proceeds of this purely local advertising may not, with good reason and logic, be employed to measure the tax laid on the plaintiff under the statute challenged.

■ Furthermore, once it is agreed as it readily can be, should and must be, that

there is local business proper to be employed in measuring the questioned tax, the burden of proof clearly rests upon the plaintiff to segregate national from local advertising and thereby establish what part of the tax paid under protest is to be returned to it and what part is to be taken into account in measuring the tax. On the first appeal of Albuquerque Broadcasting Co. v. Bureau of Revenue, 51 N.M. 332, 184 P.2d 416, 431, 11 A.L.R.2d 966, which, as here, was an effort to collect back the whole amount of taxes paid under protest, as in the case at bar, we said:

"The appellee (Bureau of Revenue) should be permitted to retain the receipts collected from taxes laid on appellant's intrastate business, the amount of which can be determined at another trial."

and added in an opinion on motion for rehearing in same case, the following:

"The burden was on the appellant (Albuquerque Broadcasting Company) to show that the whole tax was void."

The declarations just quoted from our two opinions on the first appeal are just as applicable and pertinent to plaintiff's position on the present appeal as they were on the first appeal. And to quote again from the second appeal, litigation between these same parties, reported at 54 N.M. 133, 215 P.2d 819, 820. We there reiterated our conclusion that the burden of proof was on the present plaintiff to establish what portion of the taxes paid under protest, should be returned to it. We said:

"We held in the first appeal that all local broadcasting is not necessarily interstate commerce merely because such broadcasts may be heard beyond the borders of a state; and that the burden was on appellant (appellee here) to establish a right to the return to it of the tax money, or some part of it, which it paid to the state under protest. This burden appellant did not meet as to local broadcasts. It rested its case wholly upon the assumption that *all broadcasting,* local or otherwise, over its station was interstate commerce; which we held, and now hold is not necessarily true."

The trouble with plaintiff throughout this extended litigation has been its unwillingness to agree that *any part* of its gross business is subject to the tax. It has pursued a "double or nothing," or rather "all or nothing," attitude throughout. Since we have held, *now for the third time,* that some part of plaintiff's gross proceeds, that part received for local, that is, *intrastate,* advertising is subject to the tax; and, since the evidence of what part reposes in its possession, it thus has the burden of

establishing what portion of the tax paid is to be returned to it. Unless and until it does, it has not shown itself entitled to a return of any of it. Unwillingness to disclose this evidence will not amount to inability to do so.

In conclusion, we reiterate it is our considered judgment that reason, logic and justice all combine to uphold imposition of the questioned tax as legal in its application to the plaintiff's intrastate business. Neither wizardry with words nor magic of phraseology can blot out the indestructible and controlling fact that plaintiff's local studio enjoys intrastate business from which it receives substantial and identifiable proceeds. These proceeds are properly made the measure of the tax. We say so now. We have said so on more than one occasion heretofore. It should not be necessary to say so again.

It follows from what we have said that the judgment of the district court is erroneous. It will be reversed and the cause remanded to the district court with a direction to set aside its judgment and for further proceedings not inconsistent with the views we have expressed.

It is so ordered.

COMPTON, C. J., and LUJAN, McGHEE and KIKER, JJ., concur.