293 P.2d 977

**SEISMOGRAPH SERVICE CORPORA-TION, a Corporation, Appellee,**

**v.**

**BUREAU OF REVENUE of the State of New Mexico et al., Appellants.**

**No. 5895.**

Supreme Court of New Mexico.

Feb. 17, 1956.

M. W. Hamilton, Santa Fe, for appellants.

Seth & Montgomery, Santa Fe, Joseph L. Hull, Jr., Tulsa, Okl., for appellee.

KIKER, Justice.

In this case appellee, a corporation, filed suit in the district court of Santa Fe County for recovery of $14,202.55 paid under protest by plaintiff to defendant, Bureau of Revenue, for taxes levied under the Emergency School Tax Act of this state. Appellee claimed that the taxes were illegally levied for the reasons: 1.) the levies are a burden upon interstate commerce in violation of Article 1, § 8 of the Constitution of the United States; 2.) the levies constitute a taking of private property without due process of law in violation of the fourteenth amendment; and 3.) the levies, being prohibited by the United States Constitution, are expressly prohibited by the provisions of the Emergency School Tax Act.

Appellants answered by admitting the levies and collection of the tax and that the amount was paid under protest but denied that the levies were unlawfully made

and that the collection was unlawfully made.

The case was tried to the court without a jury and judgment was for the plaintiff. From that judgment this appeal was taken.

The trial court made the following findings of fact:

"1. That plaintiff is a corporation organized under the laws of Delaware with its principal office and place of business in Tulsa, Oklahoma; that plaintiff maintains no branch office or agencies within the State of New Mexico.

"2. That the Bureau of Revenue of the State of New Mexico is created by the Legislature of said State, and is charged with the duty and function of collecting taxes levied by the Emergency School Tax Act of the State of New Mexico (Chapter 37, Session Laws of 1935 as Amended) hereafter referred to as Act; that Manuel Lujan is the Commissioner of said Bureau and C. J. Bergere is the Director of the School Tax Division of said Bureau; that all of the named defendants maintain their offices in the Capitol Building at Santa Fe, New Mexico.

"3. That plaintiff is principally engaged in the business of professional consultation upon geological and geophysical problems, encountered by the oil industry throughout the United States and many foreign countries. Its services are rendered under contracts with its clients, by which it agrees to furnish professional advice and corroborative information with regard to the subsurface geological formations of the earth's crust in any given area.

"4. That plaintiff's professional advice, opinions, and recommendations, supplemented by a contoured geophysical map and detailed technical discussion in writing, are formulated and prepared for presentation to its clients at plaintiff's head offices in Tulsa, Oklahoma. These opinions and recommendations, formulated by expert geophysicists and geologists assembled there, are drawn from knowledge of the geology of the region, interpretation of unrefined geophysical data as to the designated area, and worldwide experience with the problems of obtaining and interpreting geophysical information.

"5. That plaintiff maintains at its principal offices in Tulsa, Oklahoma, a pool of specially trained and widely experienced personnel, assembled there for the primary purpose of providing its clients a concentration of professional skill and judgment to be applied in the performance of the services contracted for. The functions of this group are widely advertised by plaintiff

as a fundamental factor in the quality of its service.

"6. That all contracts between plaintiff and its clients for services during all times material hereto were entered into in Tulsa, Oklahoma, or elsewhere than in the State of New Mexico, with parties each of whom were non-residents of the State of New Mexico.

"7. That the only function of plaintiff's services performed in the State of New Mexico, insofar as is material hereto, was that of gathering the unrefined geophysical data in the designated area; such data was obtained by the operation of scientific instruments and equipment by field personnel dispatched to the State of New Mexico for such purpose.

"8. That all field personnel which were employed to gather data in the State of New Mexico were dispatched by plaintiff from Tulsa, Oklahoma, or elsewhere than the State of New Mexico, were supervised and administered from Tulsa, Oklahoma, and upon completion of their particular assignments in New Mexico, were returned to Tulsa, Oklahoma, or dispatched to other points outside the State of New Mexico. No permanent establishment for any purpose was or is maintained in the State of New Mexico by plaintiff.

"9. That the contract fees which plaintiff charged to its clients covered all of the operations required in each instance to furnish the professional advice and recommendations contracted for, each such operation being an inseparable function of the overall service rendered. Plaintiff's entire income, insofar as is material hereto, consists of such contract fees received from its clients at Tulsa, Oklahoma.

"10. That, as indicated by the matters and things stated above, all of plaintiff's business transactions, insofar as is material hereto, were indivisible unitary transactions in interstate commerce.

"11. That defendants assessed taxes upon plaintiff's gross income, having arbitrarily allocated to the State of New Mexico all amounts received by plaintiff for professional services rendered to its clients for the period July 24, 1946, to June 30, 1952, in connection with any lands situated in that State, and on August 4, 1952, plaintiff paid such taxes in the sum of $14,202.55, as levied under the Emergency School Tax Act as originally enacted and amended, said payment having been made under protest. That all matters and things necessary to a proper action for recovery of said taxes by plaintiff under the laws of the State

of New Mexico have been complied with.

"12. That the said Emergency School Tax Act as applied to plaintiff specifies no definite formula for the apportionment of gross income derived from interstate commerce.

"13. That the taxes involved during the time material hereto were assessed and levied under Section 76-1404(H), New Mexico Statutes, 1941 Annotated.

"14. That the local activity carried on by plaintiff in the State of New Mexico is an integral part of interstate processes and cannot be separated from it."

Appellant defendant in the brief-in-chief has set out forty-four separate assignments of error. Thirty-eight of these assignments are presented under the following proposition stated as defendants' point one:

"The services rendered by the plaintiff were local and not interstate in character."

■ The findings of fact made by the trial court as above set forth are the facts in this case unless the attack made upon them by the defendant is sustained and they are set aside. Ritter-Walker Co. v. Bell, 46 N.M. 125, 123 P.2d 381; Bounds v. Carner, 53 N.M. 234, 205 P.2d 216; Renehan v. Lobato, 55 N.M. 532, 237 P.2d 100; Provencio v. Price, 57 N.M. 40, 253 P.2d 582.

The appellant has set out so much of the statute with which we are concerned as thought necessary to a determination of this case. That quoted follows:

"76-1404. Privilege taxes levied— Measured by amount of business.— There is hereby levied, and shall be collected by the bureau of revenue, privilege taxes, measured by the amount or volume of business done, against the persons, on account of their business activities, engaging or continuing, within the state of New Mexico, in any business as herein defined, and in the amounts determined by the application of rates against gross receipts, as follows:

*　　*　　*　　*　　*　　*

"H. At an amount equal to two (2) per cent of the gross receipts of any person engaging or continuing in the practice of any profession, or of any business in which the service rendered is of a professional, technical or scientific nature and is paid for on a fee basis, or by a consideration in the nature of a retainer."

As appears above, the trial court made a finding, and appellant admits, that the Emergency School Tax Act specifies no definite formula for the apportionment of plaintiff's gross income from all business done in connection with New Mexico lands so that the plaintiff's operations might be charged with a part only of the gross receipts.

The admission by appellant, just referred to, is conditioned, of course, that the business done by appellee was in fact interstate commerce. Appellant asserts, however, as the first point relied upon for reversal, that appellee's business as to opinions delivered concerning New Mexico lands was not interstate business but was local to New Mexico, and that the State of New Mexico was entitled to a tax upon the gross receipts from all the business done by appellee in rendering opinions with respect to the availability of New Mexico lands for drilling for gas or oil.

Appellant states its contention as follows:

"It is the contention of appellant that the services rendered are strictly local in character and that interstate transactions connected therewith are purely incidental to the actual services rendered. In other words, this is a tax for services rendered in New Mexico."

Appellant cites in support of its contention that the business done by appellee is local in character the following cases: Department of Treasury of State of Indiana v. Ingram-Richardson Manufacturing Co.; 313 U.S. 252, 61 S.Ct. 866, 85 L.Ed. 1313; Gwin, White and Prince v. Henneford, 305 U.S. 434, 59 S.Ct. 325, 83 L.Ed. 272; Western Live Stock Co. v. Bureau of Revenue, 303 U.S. 250, 58 S.Ct. 546, 82 L.Ed. 823; Southern Pacific Co. v. State Corporation Commission, 41 N.M. 556, 72 P.2d 15; McGoldrick v. Berwind-White Coal Mining Co., 309 U.S. 33, 60 S.Ct. 388, 84 L.Ed. 565; Department of Treasury of State of Indiana v. Wood Preserving Corp., 313 U.S. 62, 61 S.Ct. 885, 85 L.Ed. 1188; Coverdale v. Arkansas-Louisiana Pipe Line Co., 303 U.S. 604, 58 S.Ct. 736, 82 L.Ed. 1043; Lucas v. City of Charlotte, 4 Cir., 86 F.2d 394, 109 A.L.R. 297; Albuquerque Broadcasting Co. v. Bureau of Revenue, 51 N.M. 332, 184 P.2d 416, 11 A.L.R.2d 966; American Manufacturing Co. v. City of St. Louis, 250 U.S. 459, 39 S.Ct. 522, 63 L.Ed. 1084; Braniff Airways, Inc., v. Nebraska State Board of Equalization and Assessment, 347 U.S. 590, 74 S.Ct. 757, 98 L.Ed. 967; Freeman v. Hewit, 329 U.S. 249, 67 S.Ct. 274, 91 L.Ed. 265; Interstate Oil Pipeline Co. v. Stone, 337 U.S. 662, 69 S.Ct. 1264, 93 L.Ed. 1613; Joseph v. Carter & Weekes Stevedoring Co., 330 U.S. 422, 67 S.Ct. 815, 91 L.Ed. 993; Michigan-Wisconsin Pipe Line Co. v. Calvert, 347 U.S. 157, 74 S.Ct. 396, 98 L.Ed. 583; Railway Express Agency v. Commonwealth of Virginia, 347 U.S. 359, 74 S.Ct. 558, 98 L.Ed. 337; Utah Power & Light Co. v. Pfost, 286 U.S. 165, 52 S.Ct. 548, 76 L.Ed. 1038.

Appellee, answering appellant's contention that the business done by appellee was intrastate, asserts that the facts given in evidence fully establish that the trial court was correct in holding that the business done by appellee was in interstate business. It is urged that by appropriate references to testimony in the transcript that the business of appellee was of this nature: a cli-

ent would request the professional services of appellee for advice as to whether certain lands in New Mexico were probably suitable for the production of oil or gas; that after a contract for services by appellee had been entered into, field personnel would be sent to New Mexico for the purpose of gathering geophysical data; that this data consisted of records of seismic wave reflections taken at appropriate locations and recorded on time-integrated film strips; that the accuracy of such record is affected by variable factors, some on account of the equipment used and some on account of subsurface geological formations; and in order to make the data secured in New Mexico usable, it was necessary to detect the proper reflections in the records, calculate the time of travel according to formulae and to apply expert, skillful judgment and experience to determine the compounding or compensating effects of the variables on these records. For this purpose, appellee maintained a group of experts at its offices in Tulsa and that upon the work done by these men, the final report was made to the client, and an opinion was given in accordance with the employment of appellee. These reports as affecting this case were made, in all but one instance, to a client located in a third state.

While the work was being done in New Mexico, appellee maintained no offices in New Mexico, sold nothing in New Mexico and produced nothing which alone had marketable value. During that period of time, trips were made from the Tulsa office by those having supervisory control and field data was regularly forwarded to the Tulsa office for work to be done there. Collections for opinions and reports made to clients were sent to Tulsa. As to the one instance in which reports were made to a client not living in a third state, the client must have lived either in New Mexico or in Oklahoma. That which was purchased and sold in any event was delivered from Tulsa, Oklahoma, to clients in a third state, or, in one instance, to a client in Oklahoma or to a client in New Mexico. It is asserted by appellee in consequence that the business done by it was interstate business and that it was not taxable in New Mexico whether all or in part. Appellee cites the following cases in support of its contention: Nippert v. City of Richmond, 327 U.S. 416, 66 S.Ct. 586, 90 L.Ed. 760; North American Co. v. Securities Exchange Commission, 327 U.S. 686, 66 S.Ct. 785, 90 L.Ed. 945; Gibbons v. Ogden, 9 Wheat 1, 180, 22 U.S. 1, 180, 6 L.Ed. 23; Carter v. Carter Coal Co., 298 U.S. 238, 56 S.Ct. 855, 80 L.Ed. 1160.

Appellee further asserts that intangibles are no less the subject of interstate commerce than are tangible goods and commodities and cites Freeman v. Hewit, 329 U.S. 249, 67 S.Ct. 274, 91 L.Ed. 265; Associated Press v. U. S., 326 U.S. 1, 65 S.Ct. 1416, 89 L.Ed. 2013; Associated Press v. N.L.R.B., 301 U.S. 103, 57 S.Ct. 650, 81

L.Ed. 953; Lorain Journal Co. v. U. S., 342 U.S. 143, 72 S.Ct. 181, 96 L.Ed. 162; Western Union Telegraph Co. v. Foster, 247 U.S. 105, 38 S.Ct. 438, 62 L.Ed. 1006; International Text-Book Co. v. Pigg, 217 U.S. 91, 30 S.Ct. 481, 54 L.Ed. 678; Albuquerque Broadcasting Co. v. Bureau of Revenue, 51 N.M. 332, 184 P.2d 416, 11 A.L.R.2d 966.

Both appellant and appellee have quoted extensively from the cases cited by them. Many of these cases have been cited and discussed in decisions of this Court; and we believe that the question for determination here has been settled by opinions previously rendered by this Court, so, though having seriously considered again the cases cited, we enter upon no discussion of them, but turn to the consideration of the decisions of this Court.

Before taking up the New Mexico cases, it should be said that appellant in its brief made a statement of facts without reference whatever to the transcript and substantially different from the findings made by the court; but appellee for its statement of facts set out in full the facts as found by the trial court. In the argument there is little difference between the parties as to the manner in which appellee conducted its business.

It is said by appellant in its brief that the sole question involved in this appeal is whether the business of appellee was interstate commerce so that the tax levied and collected was a violation of the Commerce Clause of the Constitution of the United States. That is the question which has been argued by the parties and its determination is conclusive of two other propositions stated by appellant in its brief.

The first case in this Court dealing with a tax of the nature of that imposed in the case now under consideration was Western Live Stock v. Bureau of Revenue, 41 N.M. 141, 65 P.2d 863, 868. In that case the plaintiffs were publishers of a magazine at Albuquerque. The tax was assessed upon receipts from certain advertising and, having paid the tax under protest, plaintiffs sued for its recovery. The magazine had a circulation in New Mexico and in other states. One of its principal sources of revenue was advertising. Contracts were made by manufacturers and others living in other states than New Mexico and the magazine, after the publication, was delivered by mail and other means of carriage to readers in New Mexico and other states. The tax upon receipts from advertising under contracts with foreign advertisers was the basis of the suit in the case.

Mr. Justice Sadler, writing the opinion of the Court, carefully considered many cases, and listing them said of the situation presented at the time to this Court:

"The most that fairly can be said of the tax here imposed in its relation to plaintiffs' business, it seems to us, is that it indirectly affects interstate

commerce. It is only such transactions as directly affect same and impose a direct burden thereon that fall within the interdiction of the commerce clause of the Federal Constitution."

The holding of the Court was that the statute providing for the tax and its enforcement and the imposition of the tax upon the plaintiffs did not impose an unconstitutional burden on interstate commerce. The judgment of the lower court was reversed with directions to overrule the demurrer of the defendants which had been sustained.

When this case was reinstated on the docket of the district court, the defendants' demurrer was sustained and plaintiffs' complaint was dismissed with prejudice. Again an appeal was taken. Upon that appeal, which appears at 41 N.M. 288, 67 P.2d 505, the judgment of the lower court was affirmed. The case was then appealed from this Court to the Supreme Court of the United States, 303 U.S. 250, 58 S.Ct. 546, 82 L.Ed. 823, where the proposition of the right to impose the tax was thoroughly discussed in an opinion by Mr. Justice Stone of that court. The judgment of the New Mexico court was affirmed.

Four cases have come into this Court, each entitled Albuquerque Broadcasting Co. v. Bureau of Revenue of the State of New Mexico, the members of the Bureau being mentioned also as defendants. The first of these cases is found in 51 N.M. 332, 184 P.2d 416, 11 A.L.R.2d 966, with opinion denying the motion for rehearing at 51 N.M. 356, 184 P.2d 431. The second of these cases is to be found at 54 N.M. 133, 215 P.2d 819. The opinion in the third case appears at 54 N.M. 165, 216 P.2d 698, and the fourth of the Albuquerque Broadcasting Company cases involving a similar tax as in this case, appears at 59 N.M. 201, 281 P.2d 654.

The first three of these opinions involved the same cause of action. One of these opinions was written in denial of motion for rehearing on the first appeal, the third of the opinions covered a different period of time from that involved in the earlier opinions and turned upon a plea of res adjudicata, the Court holding that, a different period of time from that in the earlier case being involved, the plea did not bar the action. The fourth appeal was by the Bureau of Revenue from a judgment of the district court holding for plaintiff. The trial court had concluded that the Broadcasting Company, plaintiff and appellee, was engaged in interstate commerce of such nature that it was "impossible to determine with any accuracy what business originating in plaintiff's studio is interstate and which is intrastate."

The New Mexico cases above cited have sufficiently distinguished as between interstate and intrastate business to lead us to declare that appellants' business, as conducted, was interstate.

For the purpose of this opinion, it is necessary to consider the latest, only, of the Albuquerque Broadcasting Company cases, 59 N.M. 201, 281 P.2d 654, 655, for the reason that in the opinion Mr. Justice Sadler, the writer, considered each of the other cases quite fully. In the opinion in this latest of the Albuquerque Broadcasting Company cases, the writer quoted from the first of the opinions cited supra, written in 1947 by then Mr. Chief Justice Brice the following, omitting the citations:

" 'We conclude from these decisions:

" '(1) The states cannot lay a direct tax on interstate commerce or gross receipts therefrom. * * *

" '(2) There are various means of taxing interstate commerce by indirection so that it will bear its just share of state taxation. * * *

" '(3) If an intrastate incident is sufficiently disjoined from interstate commerce though indirectly a burden thereon, it may be a "taxable event," open to state taxation, if it does not discriminate against interstate commerce. * * *

" '(4) A valid state tax may be levied upon intrastate communications though the facilities used are also used in interstate commerce.' "

Again, Mr. Justice Sadler quoted from the opinion of Mr. Chief Justice Brice the following:

" 'The findings of the Court are very explicit regarding interstate broadcasting. The pleadings as well as the findings segregate the interstate business from the local business, except as to amount. It is admitted in the complaint, and found by the Court, that the appellant was engaged in "local advertising broadcasts which originate locally in the studio of KOB." There is nothing in the findings, or in the evidence for that matter to indicate that any of this local business is interstate. To that extent the appellant's case failed of proof, unless we must say that all broadcasting is interstate business, and to this we do not agree. * * * The burden was on the appellant to show that the whole tax was void. It segregated the taxable from its nontaxable activities in its pleadings and briefs, and sufficiently presented the question, for our consideration.' "

Mr. Justice Sadler's opinion shows that the opinion from which the quotations above were taken, reversed the judgment of the lower court and sent the case back with explicit directions as to what should be done. That was not done in the lower court however, but an amended complaint was permitted with the case being tried

anew and again there was an appeal to this Court. Mr. Justice Brice on the second appeal of the case said referring to the mandate on the first appeal:

"The new trial was limited to entering judgment for the appellant broadcasting company (appellee here) for the money paid by it as taxes, less the amount paid for local broadcasting. The amount for which judgment was ordered to be entered was easy of determination."

The opinion then pointed out that the action of the lower court in permitting an amended pleading to be filed and trying the case as if there had been no former trial was in violation of the mandate from the Supreme Court and reversed the judgment. Mr. Justice Sadler by further quotation from the opinion we have just been discussing, 54 N.M. 133, 215 P.2d 819, pointed out that the opinion gave directions for the trial court to determine the amount of taxes paid by the broadcasting company for business which was interstate as distinguished from intrastate business and to enter judgment in favor of the broadcasting company for the amount of money collected from it upon receipts from interstate business.

In the latest of the Albuquerque Broadcasting Company cases, Mr. Justice Sadler very fully considers that which is intrastate business as distinguished from interstate business; and again emphasizes that where there is local business as distinguished from interstate business, on account of which monies are received by the broadcasting company, the tax is properly laid on the monies so received from the intrastate business if that can be separated from the proceeds of interstate business. The opinion further shows that the burden was upon the broadcasting company as appellant to calculate the income from intrastate business and to pay the tax upon that business.

We hold that appellant in this case was not engaged in intrastate business in New Mexico. Work was done by the appellant in New Mexico, through its employees, which gave them the basic material necessary, after the considerations, calculations and changes above mentioned, upon which to form the opinions which were prepared for appellant's clients, these opinions being delivered to clients in other states than Oklahoma. The record shows no means by which any part of the receipts of plaintiffs can be definitely declared as receipts from operations in New Mexico. It follows that the tax laid upon the gross receipts of the appellant from the preparation of opinions and supporting data in Oklahoma, which were delivered to its clients in other states, is invalid.

Any opinions delivered to clients in Oklahoma were in intrastate commerce of Okla-

homa and the income from such opinions was not taxable in New Mexico.

The judgment of the lower court should be, and is hereby, affirmed.

It Is So Ordered.

COMPTON, C. J., and LUJAN, SADLER, and McGHEE, JJ., concur.